ATTORNEY FOR APPELLANT
Paul Stephen Miller
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Oct 22 2014, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

No.  35S02-1401-CR-10

GARY WAYNE OSWALT,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

Appeal from the Huntington Circuit Court, No. 35C01-1104-FA-80
The Honorable Thomas M. Hakes, Judge

On Petition to Transfer from the Indiana Court of Appeals, No.  35A02-1208-CR-684

**October 22, 2014**

**Rush, Chief Justice.**

Under Indiana's "exhaustion rule," parties may seek appellate review of for-cause challenges to prospective jurors only if they have exhausted their peremptory challenges. But what if they use their last peremptory challenge for its traditional purpose of striking a candidate they consider *undesirable*, instead of using it to cure the trial court's refusal to strike an allegedly *incompetent* one for cause? The State argues that doing so violates the exhaustion rule, thus waiving appellate review. We disagree and hold as a matter of first impression that parties satisfy the exhaustion rule the moment they use their final peremptory challenge—regardless of whom they strike. We also

hold that if parties fully comply with the exhaustion rule and demonstrate they were unable to remove any prospective juror for lack of peremptories, appellate courts may review denial of any motion to strike for cause, regardless of whether a challenged juror actually served on the jury. Our holding preserves the fundamental policy of the exhaustion rule while recognizing the cherished status of peremptory challenges. Here, Defendant preserved appellate review of three for-cause challenges, but because the trial court was within its discretion to deny all of them, we affirm his conviction.

**Facts and Procedural History**

Defendant Gary Wayne Oswalt was tried by a jury on multiple counts of child molesting, child solicitation, and possession of child pornography. During voir dire, Oswalt moved to strike several prospective jurors for cause, including Jurors 7 and 13. The trial court denied his motions for both jurors, and in response, Oswalt used two of his peremptory challenges to remove them.

As voir dire continued, the parties reviewed a third panel of prospective jurors. Oswalt wished to strike Juror 28 for cause and use his final peremptory challenge to remove Juror 25 because he was the brother-in-law of another prospective juror, which was not grounds to remove him for cause. When it came time to submit motions to strike, Oswalt simultaneously presented his for-cause and peremptory challenges—an unusual deviation from the standard procedure of making for-cause challenges first, followed by peremptories. The trial court denied Oswalt's motion to remove Juror 28 for cause. But because Oswalt had presented his for-cause and peremptory challenges at the same time, the trial court gave Oswalt the opportunity to switch his final peremptory challenge to Juror 28 instead of Juror 25. Oswalt vacillated on the decision but eventually decided to leave his final peremptory challenge for Juror 25 as he originally intended after stating "I've got a record that says . . . I'm out of preempts and I'm not getting who I want." Juror 25 was removed, and Juror 28 sat on the jury. The jury convicted Oswalt on all counts, and the trial court entered an eighty-four-year aggregate sentence.

Oswalt appealed the trial court's denial of his motions to strike Jurors 7, 13, and 28 for cause. The Court of Appeals found Oswalt had satisfied the exhaustion rule for Jurors 7 and 13 even though they did not serve on the jury but that the trial court acted within its discretion not to remove them both for cause. Oswalt v. State, 995 N.E.2d 685, 700–701 (Ind. Ct. App. 2013). Conversely, it held Oswalt had waived appellate review of Juror 28 for failure to exhaust his peremptory challenges—

narrowing the scope of appellate review by strictly applying the exhaustion rule to require parties to use even their final peremptory challenge to remove a juror whom the trial court refused to strike for cause. Id. at 701. Because Oswalt failed to use his final peremptory challenge to strike Juror 28, the Court of Appeals reasoned he had waived appellate review. Id. at 701–702. We granted transfer. Ind. Appellate Rule 58(A). We will discuss additional facts as needed.

**Standard of Review**

Oswalt seeks appellate review of three motions to strike prospective jurors for cause. Our ability to review those claims hinges on two questions of first impression: (1) Does the exhaustion rule require Oswalt to use his final peremptory challenge to remove a juror whom the trial court refused to remove for cause? (2) Even if Oswalt satisfied the exhaustion rule, may we review prospective jurors who never served on the jury? Both questions are pure questions of law because they "'require[] neither reference to extrinsic evidence, the drawing of inferences therefrom, nor the consideration of credibility questions for [their] resolution.'" Bader v. Johnson, 732 N.E.2d 1212, 1216 (Ind. 2000) (quoting 4A Kenneth M. Stroud, Indiana Practice § 12.3 at 134 (2d ed. 1990)). We thus review each question de novo. Id.

Then, if Oswalt is entitled to appellate review of his for-cause challenges, we review the trial court's decision on those challenges for an abuse of discretion. See Merritt v. Evansville-Vanderburgh School Corp., 765 N.E.2d 1232, 1235 (Ind. 2002). The trial court has the unique position to observe and "assess the demeanor of prospective jurors as they answer the questions posed by counsel." Smith v. State, 730 N.E.2d 705, 708 (Ind. 2000). "[O]n appeal, we afford substantial deference to the trial judge's decision . . . and will find error only if the decision is illogical or arbitrary." Whiting v. State, 969 N.E.2d 24, 29 (Ind. 2012).

**Discussion and Decision**

## I. Impartial Juries and Objections to Prospective Jurors

The Federal and Indiana Constitutions guarantee the right to an impartial jury. Ramirez v. State, 7 N.E.3d 933, 936 (Ind. 2014). But selecting impartial juries depends upon the parties' discernment and the trial court's discretion to select a panel of objective and unbiased jurors "who will conscientiously apply the law and find the facts." Wainwright v. Witt, 469 U.S. 412, 423

3

(1985). Removing prospective jurors—whether peremptorily or for cause—who cannot perform these tasks is the mechanism parties and trial courts use to achieve an impartial jury. Emmons v. State, 492 N.E.2d 303, 305 (Ind. 1986).

Peremptory challenges are "an important auxiliary tool" for that purpose. Whiting, 969 N.E.2d at 29. They give parties the nearly unqualified right to remove any prospective juror they wish—restricted only by the parties' finite allotment of challenges and the constitutional ban on racial, gender, and religious discrimination. Batson v. Kentucky, 476 U.S. 79, 89 (1986) (race); J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 140–43 (1994) (gender); Highler v. State, 854 N.E.2d 823, 829 (Ind. 2006) (religion). "Unlike challenges for cause, the peremptory is often exercised on 'hunches' and impressions having to do, perhaps, with a prospective juror's habits, associations, or 'bare looks.'" Merritt v. State, 488 N.E.2d 340, 341 (Ind. 1986). These "hunches" are difficult if not impossible to explain to a trial court or opposing counsel—which is why parties are "generally not required to explain [their] reasons for exercising a peremptory challenge, and the exercise is not subject to the trial court's control." Price v. State, 725 N.E.2d 82, 86 (Ind. 2000). "Our belief that experienced lawyers will often correctly intuit which jurors are likely to be the least sympathetic, and our understanding that the lawyer will often be unable to explain the intuition, are the very reason we cherish the peremptory challenge." J.E.B., 511 U.S. at 148 (O'Connor, J., concurring).

For-cause motions, by contrast, are available to exclude any prospective juror whose "views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath'" and thus violate the defendant's Sixth Amendment rights. Witt, 469 U.S. at 423–24 (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). Similarly, Indiana Code section 35-37-1-5 (2008) and Indiana Jury Rule 17 list many additional bases for removing a prospective juror for cause. Whiting, 969 N.E.2d at 29. A juror who qualifies for removal under these constitutional or statutory criteria may be removed as an "incompetent juror," while a juror "who is not removable for cause but whom the party wishes to strike" peremptorily is termed "objectionable." Id. at 30 n.7. Unlike peremptory strikes, strikes for cause require trial court approval, so parties regularly seek appellate review of unsuccessful for-cause motions. This, in turn, requires them to satisfy the exhaustion rule, which is at the heart of this case.

## II. The Exhaustion Rule and Appellate Review of Motions to Strike for Cause

The exhaustion rule requires parties to peremptorily remove jurors whom the trial court refuses to strike for cause or show that they "had already exhausted [their] allotment of peremptories"

at the time they request for-cause removal. Id. at 30. And "even where a defendant preserves a claim by striking the challenged juror peremptorily," an appellate court will find reversible error "only where the defendant eventually exhausts all peremptories *and* is forced to accept either an incompetent or an objectionable juror." Id. The rule promotes judicial economy: parties should use the tools at their disposal to cure error and avoid significant costs that will accrue to the judiciary, the parties, and the citizen jurors. Id. (citing Merritt, 765 N.E.2d at 1236–37). Failure to comply with the exhaustion rule results in procedural default.

We have also historically recognized that parties are "prejudiced and injured" when they are compelled to use peremptory challenges to cure "the erroneous rulings of the court on [their] challenges for cause." Fletcher v. Crist, 139 Ind. 121, 126–27, 38 N.E. 472, 474 (1894). Parties who spend their peremptories to remedy alleged trial court error lose their discretion to peremptorily strike additional jurors. Whether the exhaustion rule also limits parties' discretion to apply their final peremptory as they wish is a question of first impression. And does peremptorily striking a juror after an unsuccessful challenge for cause, as the exhaustion rule requires, forfeit review of that for-cause challenge? After all, we have said that "the issue of whether the defendant had an impartial jury must focus on one or more of the jurors who actually sat and rendered the decision." Ward v. State, 903 N.E.2d 946, 954–55 (Ind. 2009). Both issues require us to consider the trial-level costs of appellate review.

We hold that complying with the exhaustion rule neither comes at the cost of a party's final peremptory challenge, nor precludes review of earlier for-cause challenges. Instead, parties satisfy the exhaustion rule the moment they use their final challenge, regardless of whom they strike. We also hold that the parties who satisfy the exhaustion rule should not lose appellate review for doing so. Instead, appellate courts may review jurors whom parties were forced to remove peremptorily when they show that (1) they satisfied the exhaustion rule, and that (2) an incompetent or an objectionable juror served on the jury. These conclusions fulfill the purpose of the exhaustion rule, while honoring parties' time-honored discretion to use their peremptories as they see fit.

We conclude that Oswalt's use of his last peremptory strike satisfied the exhaustion rule, and that we may review his for-cause challenges—not just to Juror 28, but also to Jurors 7 and 13 who did not serve because he struck them peremptorily. But we find that the court did not abuse its discretion in denying all three challenges, and we therefore affirm Oswalt's convictions and sentence. In all other respects, we summarily affirm the Court of Appeals. App. R. 58(A)(2).

## A. The Exhaustion Rule and the Final Peremptory Challenge

The State argues Oswalt failed to satisfy the exhaustion rule because he could have used his final peremptory challenge on Juror 28, instead of striking Juror 25 who was ineligible to be removed for cause. Peremptorily removing Juror 28 would have immediately corrected any alleged trial court error and thus, in the State's view, prevented any need for appeal. Two panels of our Court of Appeals have agreed with that view. Oswalt, 995 N.E.2d at 701 & n.6; Hatter v. Pierce Mfg., Inc., 934 N.E.2d 1160, 1167 (Ind. Ct. App. 2010). But we disagree—we have never held the exhaustion rule to require parties to use their final peremptory challenge exclusively for error correction, and such a requirement would undermine parties' broad discretion to exercise their peremptory challenges as they choose.

In Merritt, we stopped short of addressing how the exhaustion rule applies to parties' use of their final peremptory challenge. There, the trial court denied Merritt's motion to strike three prospective jurors for cause. Merritt, 765 N.E.2d at 1234. In response, Merritt peremptorily removed two of them, but used her final peremptory challenge on a juror whom she had not sought to remove for cause. Id. On appeal, Merritt sought review of her for-cause challenges to remove two prospective jurors—one she had peremptorily removed, and the other she had not. Id. We held the exhaustion rule barred review because she hadn't used a peremptory strike on the second juror. Id. at 1237–38. But we explained that she could have preserved review by doing just what Oswalt did here: striking each prospective juror whose for-cause challenge she wished to appeal and making a record of any remaining jurors she could not strike for lack of peremptory challenges. Id. at 1238. Although we required Merritt to peremptorily remove the jurors who were not removed for cause in order to preserve appellate review, we did not hold that she had to do so at the expense of her *final* peremptory challenge.

We now hold that parties satisfy the exhaustion rule the moment they use their final peremptory challenge, whether they strike an allegedly incompetent juror or a merely objectionable one. Our decision preserves the policy of judicial economy that underlies the exhaustion rule without needlessly forfeiting trial litigants' discretion. Parties must still exhaust all of their peremptories, but they do not need to sacrifice their instincts and hunches in the process. Transforming Oswalt's final peremptory challenge into a mere error-correction tool would narrow the challenge's historical

6

significance and undermine a critical mechanism for empaneling an impartial jury. Rather than force trial litigants' hand, we leave it to them how to exercise their final peremptory challenge.

Here Oswalt stated, consistent with our recommendation in Merritt, "I've got a record that says . . .  I'm out of preempts and I'm not getting who I want." At that moment he could have struck Juror 28 and corrected any perceived error by the trial court. But as his counsel noted at oral argument, he "went with [his] gut" and removed Juror 25. Not every party would have made the same decision. But "we cherish the peremptory challenge" for precisely that reason. J.E.B., 511 U.S. at 148 (O'Connor, J., concurring). Thus, we hold that Oswalt satisfied the exhaustion rule and preserved appellate review for Juror 28 when he struck Juror 25 with his final peremptory challenge.

**B.  Appellate Review of Prospective Jurors Who Never Served on the Jury**

The State also argues that we need not review whether there was good cause to strike Jurors 7 and 13 because Oswalt peremptorily struck them from serving on the jury. The State relies on Ward, where we said "the issue of whether the defendant had an impartial jury must focus on one or more of the jurors who actually sat and rendered the decision." 903 N.E.2d at 954–55. But the State's interpretation of Ward would penalize parties who fully comply with the exhaustion rule, and it deviates from the trajectory of our prior case law. Thus, review of Jurors 7 and 13 is warranted because Oswalt peremptorily removed both of them, and Juror 28 was an objectionable juror who actually served on the jury.

First, when parties exhaust their peremptory challenges, they must show that one of those challenges was used on the prospective juror for whom they seek appellate review. As we said in Whiting, parties preserve appellate review of error for denial of a challenge for cause when they "*used a peremptory challenge to remove the challenged juror* or had already exhausted [their] allotment of peremptories." 969 N.E.2d at 30 (emphasis added). It is counterintuitive to suggest that the exhaustion rule requires a party to use a peremptory challenge to preserve appellate review of a for-cause motion and then deny review precisely because the party complied. But using a peremptory challenge is only the first step: "[E]ven where a defendant preserves a claim by striking the challenged juror peremptorily, reversible error occurs only where the defendant eventually exhausts all peremptories *and* is forced to accept either an incompetent or an objectionable juror." Id. This latter prong applies our well-established standard of review to the voir dire context: "Reversible error

occurs only when the error has prejudiced defendant." Woolston v. State, 453 N.E.2d 965, 968 (Ind. 1983). Thus, when a party exhausts all peremptories and is forced to accept an objectionable or incompetent juror, any erroneous for-cause motion is prejudicial because it deprives the party of a peremptory that could have been used for its time-honored purpose.

The State argues that only jurors who actually served on the jury can prejudice the trial, so that we should follow our dicta in Ward and not review jurors who were peremptorily removed. But Ward was not so restrictive when read in light of our prior case law. In Merritt, we said reversible error occurs when parties prove both the erroneous denial of a motion to strike for-cause and their inability to strike another objectionable juror because they exhausted their peremptories. 765 N.E.2d at 1237. Our later decision in Ward merely emphasized that at least one incompetent or objectionable juror must actually have served on the jury, 903 N.E.2d at 954–55—because that is how the party is prejudiced.

The State's argument also assumes that objectionable jurors who serve on the jury are less prejudicial to a fair trial than incompetent jurors. The State even made this assumption explicit during oral argument. But Indiana has always taken the "more lenient approach" of considering objectionable jurors and incompetent jurors to be equally prejudicial:

> In Indiana, it is enough to show that an objectionable juror served because a party was forced to use a peremptory strike to cure an erroneous denial of a challenge for cause. The appellant need not prove that the objectionable juror was incompetent, i.e., one who should have been excused for cause.

Merritt, 765 N.E.2d at 1236 & n.6 (citing Woolston, 453 N.E.2d at 968).

Here, we review Jurors 7 and 13 because Oswalt used peremptory challenges to remove them, and Juror 28 was an objectionable juror who served on the jury. Although we hold below that Juror 28 was not an *incompetent* juror, and the trial court properly refused to remove him for cause, Oswalt has nonetheless shown that Juror 28 was *objectionable*. Oswalt made such a record and specified that he would have removed Juror 28 with a peremptory challenge if he had one left to use. That is enough to show that Juror 28 was at least objectionable, even if not incompetent. See Whiting, 969 N.E.2d at 30 & n.7. Thus, Oswalt has preserved appellate review of his motions to strike Jurors 7 and 13 for cause.

### III. Defendant's Motions to Strike Prospective Jurors 7, 13, and 28 For-Cause

#### A. Juror 28

Our review of Juror 28's voir dire convinces us that the trial court was within its discretion to deny Oswalt's for-cause challenge. We recognize that Juror 28 expressed discomfort at the thought of trying a child-molestation case. He and defense counsel discussed that discomfort and its impact on his ability to perform his duties at length. Juror 28 elaborated that if he were on trial for Oswalt's charges, Juror 28 would not want a juror like himself adjudicating the case. But the trial court also questioned Juror 28 and rehabilitated him. Juror 28 told the court that he could follow the court's instructions, listen to the evidence, and "make a decision only upon the evidence and instructions that [he] hear[d] in court." And when asked whether he felt that he could be fair toward Oswalt, Juror 28 only reiterated that he was uncomfortable. Thus, the trial court denied Oswalt's motion.

Under those circumstances, denying Oswalt's motion was within the trial court's discretion. The record indicates that Juror 28 admitted only to discomfort, not bias or prejudice, at the thought of sitting as a juror in a child-molestation case. And mere discomfort is not one of the enumerated grounds for removal for cause. See I.C. § 35-37-1-5(a); J.R. 17. Our justice system depends on jurors who appreciate the gravity of the cases they are called upon to try, so long as they demonstrate a commitment to impartiality and a willingness to dutifully follow the court's instructions. Thus, we affirm the denial of Oswalt's motion to strike Juror 28 for cause.

#### B. Juror 7

We also affirm the trial court's decision not to remove Juror 7. During voir dire, Juror 7 told defense counsel "I see somebody over there that I know." The trial court called both the State and defense counsel to the bench, and all expressed confusion about the object of Juror 7's concern. The trial court instructed defense counsel to "go through the witnesses and ask if she knows or anybody knows any of the witnesses." When questioning resumed, Juror 7 clarified that she did not know the name of the person she recognized, but knew the person was related to Oswalt and would "[r]ather not have to . . . be involved in a family problem." And when the trial court read the list of witnesses, Juror 7 indicated only that she was familiar with one of the detectives set to testify for the State from church and her son's activities at the YMCA, but that she did not "know him personally." The trial court then questioned Juror 7 individually in the presence of the other jurors, and she assured

the trial court that she would make a decision on the evidence and instructions alone and could render a fair and impartial decision.

On this record, we cannot say that the trial court abused its discretion to deny Oswalt's motion to strike Juror 7 for cause. The only possible statutory ground for removal was bias or prejudice, <u>see</u> I.C. § 35-37-1-5(a)(11), and Oswalt did not establish that Juror 7 was "biased or prejudiced against the defendant" for merely acknowledging that she knew someone in the court room. Oswalt's counsel argued that the person whom Juror 7 identified was Oswalt's mother, but the record of this is too inconclusive to establish an abuse of discretion. Regardless, expressing a reluctance to "be involved in a family problem" falls short of bias or prejudice. We affirm the trial court's decision not to strike Juror 7 for cause.

### C. Juror 13

Finally, Oswalt moved to strike Juror 13 for cause because the prospective juror indicated that he assumed that defendants were guilty until proven innocent. Asked by Oswalt's defense counsel whether he assumed "that Mr. Oswalt is guilty right now," Juror 13 responded, "Yes. . . . It's not fair but . . . [t]hat's just how I, that's how I feel . . . ." But Juror 13 eventually showed a change of heart after further questioning. The State asked him whether Oswalt should enjoy the presumption of innocence, and whether he could make a decision only after hearing all the evidence. In response, Juror 13 nodded yes. Based on this answer, the court denied Oswalt's motion to strike. The trial court was in the best position to observe Juror 13 and "assess [his] demeanor . . . as [he] answer[ed] the questions posed by counsel." <u>Smith</u>, 730 N.E.2d at 708. Because Juror 13 retreated from his initial statement of partiality and clarified that he would render an impartial verdict based on the evidence, <u>see</u> I.C. § 35-37-1-5(b)(2)–(3), the trial court had discretion not to find good cause for the juror's removal, and we affirm its decision.

### Conclusion

Oswalt satisfied the exhaustion rule and thus preserved appellate review of his motions to strike Jurors 7, 13, and 28 for cause—but he has not carried his burden to show the trial court abused its discretion in denying his motions. We therefore affirm his conviction. On all other grounds, we summarily affirm the decision by the Court of Appeals.

Dickson, Rucker, and David, JJ., concur.
Massa, J., concurs in result.