# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 26 2017, 10:15 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew R. Gouldsmith, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 26, 2017 <br><br> Court of Appeals Case No. <br> 55A01-1605-CR-1022 <br><br> Appeal from the Morgan Circuit Court <br><br> The Honorable Matthew Hanson, Judge <br><br> Trial Court Cause No. <br> 55C01-1408-FB-1291 |

**Bailey Judge.**

# Case Summary

[1] Matthew Gouldsmith ("Gouldsmith") was convicted of three counts of Sexual Misconduct with a Minor, as Class B felonies;[1] one count of Child Exploitation, as a Class C felony;[2] and two counts of Voyeurism, as Class D felonies.[3] The trial court sentenced him to an aggregate term of imprisonment of thirty-one years, with eleven years suspended to probation. He now appeals.

[2] We affirm in part, reverse in part, and remand.

# Issues

[3] Gouldsmith presents two issues for our review. We restate these as:

    I.    Whether the trial court abused its discretion when it denied certain of Gouldsmith's for-cause challenges to jurors; and

    II.    Whether the trial court abused its discretion in fixing the terms of Gouldsmith's probation.

---

[1] Ind. Code § 35-42-4-9(a)(1).

[2] I.C. § 35-42-4-4(b)(1).

[3] I.C. §§ 35-45-4-5(b)(2), -(c)(1).

# Facts and Procedural History

[4] Gouldsmith, who lived in Martinsville, had a teenaged son who dated M.B. In the summer of 2012, after M.B. had graduated from middle school, Gouldsmith met M.B. after sending her a message through Facebook. During their exchange of messages, M.B. told Gouldsmith that she attended school with his son and that Gouldsmith's son was her ex-boyfriend. M.B. lived in Brooklyn, Indiana, at the time, and both she and Gouldsmith frequented the same comic book store in Martinsville.

[5] One day during the summer of 2012, Gouldsmith asked M.B. to go to his house to watch movies and play video games. M.B. agreed to go with Gouldsmith, and later went home.

[6] Later in the summer of 2012, Gouldsmith again asked M.B. to come to his home from the comic book store. Around this time, M.B. had begun taking a gym class during the summer, and Gouldsmith offered to give her a ride to school the next morning if she wanted to stay the night. M.B. agreed, and went to sleep in a bedroom alone, with Gouldsmith sleeping in a separate room. However, during some point in the night, M.B. awoke to find Gouldsmith in bed with her. Though M.B. tried to squirm away, Gouldsmith drew closer. He eventually removed M.B.'s pants and underwear and penetrated her vagina with his penis. The next day, Gouldsmith drove M.B. to her gym class.

[7] Later again that summer, M.B. stayed the night at Gouldsmith's home. Gouldsmith again performed sexual intercourse upon M.B. As time went on,

the frequency of M.B.'s visits to Gouldsmith's home increased, as did the frequency of sexual activity, which included vaginal, anal, and oral intercourse. This continued through the summer of 2013, when M.B. reached fifteen years of age. Eventually, Gouldsmith was engaging in sexual acts with M.B. three to five times per week.

[8] M.B. and Gouldsmith also exchanged numerous text messages throughout their interactions. Gouldsmith would show M.B. nude photos of himself, and M.B. sent photos of herself to Gouldsmith. On two occasions, Gouldsmith took photos through a cracked door of an undressed M.B. dressing herself while M.B. was unaware of Gouldsmith's presence.

[9] Gouldsmith eventually decided to open his own comic book shop in Martinsville, and offered to hire M.B. to help with work at the shop. Gouldsmith usually paid M.B. with cigarettes, rather than with money. Eventually, in 2014, the sexual relationship between Gouldsmith and M.B. ended after a dispute between the two.

[10] In June 2014, M.B. demanded in a text message that Gouldsmith pay her $200 every other week and threatened to tell police about the sexual activity between them, which she said "'by law is statutory rape.'" (Tr. Vol. 4 at 172.) Gouldsmith in turn contacted police to ask them to intervene by stopping M.B.'s communication with him. During the subsequent police investigation, M.B. stood by her allegations concerning Gouldsmith's conduct. Gouldsmith was subsequently arrested.

[11]     On August 27, 2014, Gouldsmith was charged with four counts of Sexual Misconduct with a Minor; one count of Child Exploitation; and two counts of Voyeurism. On January 14, 2016, the State amended the charging information, and proceeded to trial with three counts of Sexual Misconduct with a Minor, one count of Child Exploitation, and two counts of Voyeurism.

[12]     On January 25, 2016, a jury trial commenced and jury selection was conducted. Based upon information in the juror questionnaires related to prior sexual assault victimization or knowledge of others who had been victims of sexual assault, individual voir dire was conducted of members of the venire. The trial court struck a number of the members of the venire and denied several of Gouldsmith's for-cause objections. Jury selection proceeded and Gouldsmith lodged more peremptory challenges, striking from the jury two venirepersons against whom he had previously lodged for-cause objections that the trial court denied.

[13]     A trial was conducted on January 26 through January 28, 2016. At the conclusion of the trial, the jury found Gouldsmith guilty of three counts of Sexual Misconduct with a Minor, one count of Child Exploitation, and two counts of Voyeurism.

[14]     On April 5, 2016, the trial court entered judgment of conviction and sentenced Gouldsmith to an aggregate term of imprisonment of thirty-one years, with eleven years suspended to probation. Four years of the probation were to be served as monitored probation. A number of conditions were imposed as part

of Gouldsmith's probation, including terms that prohibited Gouldsmith from patronizing adult bookstores and other establishments and from engaging in certain kinds of sexual relationships.

[15]    This appeal ensued.

# Discussion and Decision

## For-Cause Challenges

[16]    Gouldsmith's first contention on appeal is that the trial court abused its discretion when it denied his for-cause challenges as to three members of the venire. We generally review a trial court's decision on for-cause challenges for an abuse of discretion. *Oswalt v. State*, 19 N.E.3d 241, 245 (Ind. 2014). Because the trial court is uniquely positioned to observe and assess the demeanor of potential jurors during questioning by counsel, we afford substantial deference to trial court decisions on for-cause challenges. *Id.* We will therefore "'find error only if the decision is illogical or arbitrary.'" *Id.* (quoting *Whiting v. State*, 969 N.E.2d 24, 29 (Ind. 2012)).

[17]    An appellant must have preserved for appellate review the trial court's denial of a for-cause objection, and failure to do so results in procedural default. *Id.* at 246. This requirement, known as the exhaustion rule, "requires parties to peremptorily remove jurors whom the trial court refuses to strike for cause or show that they 'had already exhausted [their] allotment of peremptories' at the time they request for-cause removal." *Id.* (quoting *Whiting*, 969 N.E.2d at 30).

An appellate court will find reversible error "'only where the defendant eventually exhausts all peremptories *and* is forced to accept either an incompetent or an objectionable juror.'" *Id.* (quoting *Whiting*, 969 N.E.2d at 30).

[18] In articulating the exhaustion rule, the Indiana Supreme Court has counseled parties to avoid waiver. The Indiana Supreme Court has twice observed that preservation of an appeal from the allegedly erroneous denial of for-cause objections requires both 1) exhaustion of a party's peremptory strikes, and 2) that the objecting party "made a record of [its] desire and inability to strike" objectionable jurors. *Merritt v. Evansville-Vanderburgh School Corp.*, 765 N.E.2d 1232, 1238 (Ind. 2002) (concluding that failure to use peremptory strikes and to make a record of the inability to strike additional jurors subject to for-cause challenges resulted in waiver of appellate review); *Oswalt*, 19 N.E.3d at 248 (finding appeal preserved when the defendant extinguished his peremptory challenges and had "'a record that says … I'm out of preempts and I'm not getting who I want.'"). The purpose of a contemporaneous objection "is to promote fair trial by precluding a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him." *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005) (citation and quotation marks omitted), *trans. denied*. The contemporaneous objection rule requires objections be voiced in time "so that harmful error may be avoided or corrected and a fair and proper verdict will be secured." *Id.*

[19] Here, Gouldsmith contends that he satisfied the exhaustion rule. Gouldsmith notes that he used all his peremptory challenges against venirepersons, some of whom were individuals against whom he lodged for-cause challenges that the trial court denied, but that he had exhausted his peremptory challenges so that an objectionable juror—venireperson forty—was seated. The State, on the other hand, argues that Gouldsmith did not properly preserve this issue for appeal because he "failed to make a record in the trial court that he had exhausted his allotment of peremptory challenges and was therefore forced to accept Juror forty by the trial court's ruling on his challenge for cause." Appellee's Br. P. 13.

[20] We agree with the State. Gouldsmith did not make an appropriate record. The record does not reflect any indication that, when the trial court seated venireperson forty on the jury, Gouldsmith made any objection or provided other notice to the court that he had extinguished his peremptory strikes, that he would use such strike on venireperson forty if he had any remaining, and that he therefore was being forced to go to trial with an objectionable juror. Thus, though he contends that he had extinguished his peremptory challenges, he did not make a record of that extinguishment by lodging an objection to the fact that he was being forced to go to trial with objectionable jurors. As in *Merritt*, 765 N.E.2d at 1238, Gouldsmith has waived appellate review of the trial court's denial of his for-cause challenges.

# Terms of Probation

[21] Gouldsmith's second contention on appeal is that the trial court abused its discretion in setting the terms of his probation. Trial courts have broad discretion in establishing conditions of probation to safeguard the general public and to create law-abiding citizens. *Patton v. State*, 990 N.E.2d 511, 514 (Ind. Ct. App. 2013). "Conditions of probation should effectuate the supervision required to achieve probation goals and, therefore, must be functionally and rationally related to the probationer's rehabilitative needs and to society's interests." *Id.* We will only set aside a trial court's terms of probation when the court has abused its discretion. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* (citation and quotation marks omitted).

[22] Here, Gouldsmith lodged timely objections to several of the conditions of probation that the trial court imposed, and he challenges those conditions of probation on appeal. Gouldsmith identifies as flawed terms 12 and 17 of his probation. Term 12 provides:

> You shall not possess obscene matter as defined by IC 35-49-2-1 or child pornography as defined in 18 U.S.C. § 2256(8), including but not limited to: videos, magazines, books, DVD's, and material downloaded from the Internet. You shall not visit strip clubs, adult bookstores, motels specifically operated for sexual encounters, peep shows, bars where partially nude or exotic dancers perform, or businesses that sell sexual devices or aids.

(App'x Vol. II at 56.)  Term 17 provides, "You shall not engage in a sexual relationship with any person who has children under the age of 16 years unless given permission by the court and your treatment provider." (*Id.*)

[23] Gouldsmith contends that these provisions of the probation order impermissibly infringe on one or another of his constitutional rights.  However, "conditions of supervision may restrict a probationer's activities 'substantially beyond the ordinary restrictions imposed by law on an individual citizen.'"  *Patton*, 990 N.E.2d *at* 515.  Probation conditions "may impinge upon a probationer's right to exercise an otherwise constitutionally protected right because 'probationers simply do not enjoy the freedoms to which ordinary citizens are entitled.'"  *Id.* (quoting *Purdy v. State*, 708 N.E.2d 20, 22 (Ind. Ct. App. 1999)).  When a defendant challenges a term of probation as unduly intruding upon a constitutional right, we review that claim by means of a balancing test that looks to the following three factors:  1) the purpose to be served by probation; 2) the extent to which constitutional rights enjoyed by law-abiding citizens should be enjoyed by probationers; and 3) the legitimate needs of law enforcement.  *Id.*

## Term 12

[24] Gouldsmith identifies term 12 as suffering several infirmities.  We find some of Gouldsmith's contentions well-founded, and others less so.

[25] Gouldsmith correctly observes that this Court has found as unconstitutionally vague a prohibition upon visiting "businesses that sell sexual devices or aids." *Collins v. State*, 911 N.E.2d 700, 713 (Ind. Ct. App. 2009), *trans. denied*.  In

*Collins*, this Court held that that language was vague enough to include establishments like drug stores, and remanded the trial court's order for clarification. *Id.* The same language used in *Collins* was used in Gouldsmith's probation order.

[26] The State attempts to salvage this language by placing it in context with other businesses listed in term 12, which lists adult bookstores, establishments employing exotic dancers, and other such locations. The State argues that the intent of the provision is clear: the purpose is to preclude Gouldsmith from visiting establishments related to sexual arousal and gratification. Yet the provision at issue here uses the same language as in *Collins*, together with the word "or": "*or* businesses that sell sexual devices or aids." (App'x Vol. II at 56.) The word "or" is disjunctive, and does not make the words that follow dependent upon the words that precede the preposition for plain meaning. *See, e.g.*, *Curtis v. State*, 937 N.E.2d 868, 872 (Ind. Ct. App. 2010) (noting that "or" and "and" are distinct terms, and "or" generally indicates the disjunctive). "Or" continues to retain a disjunctive meaning, and the challenged language related to businesses selling sexual aids has already been held to be unconstitutionally vague. The State suggests that, given the holding in *Collins* and the disjunctive language of the probation condition, we should read the clause in context as prohibiting visits to "businesses that [predominantly] sell sexual devices or aids." (Appellee's Br. at 20.) We decline the State's invitation to rewrite the terms of a probation provision that this Court has

already found to be vague. The State's argument is unpersuasive, and, like the *Collins* Court, we reverse this portion of the probation order for clarification.

[27] Gouldsmith also challenges the portion of term 12 that prohibits him from patronizing such businesses as strip clubs, motels operated for engaging in sexual activity, and adult bookstores. Gouldsmith contends that this restriction is "overly broad and unduly burdensome and intrudes upon [his] right of association" (Appellant's Br. at 26), and infringes upon his "constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Lawrence v. Texas*, 539 U.S. 558, 574 (2003).

[28] We disagree. The purpose of this condition of Gouldsmith's probation is to manage some facets of his sexual conduct, for which he has been subjected to multiple criminal convictions and required to register as a sex offender. The core rights protected by the Fourteenth Amendment, as expressed in *Lawrence*, are fundamental personal choices related to family, relationships, and childbirth. *See id.* (observing that "[p]ersons in a homosexual relationship may seek autonomy for these purposes" and striking as unconstitutional a criminal statute against sodomy); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 851 (1992) (reiterating the recognition of autonomy in personal decisions related to marriage and contraception as "central to personal dignity and autonomy"). Gouldsmith, however, does not articulate how the ability to see nude dancers or to buy pornographic videos is central to his choices concerning family relationships or personal dignity. Further, the State notes that

Gouldsmith's conduct in this case involved accessing and viewing videos and images of his victim, suggesting that a restriction on Gouldsmith's access to and consumption of sexually-related media is related to law enforcement needs. We accordingly find no error in this portion of term 12 that prohibits Gouldsmith's patronizing of adult bookstores, strip clubs, and the like.

## Term 17

We turn now to the other probation condition Gouldsmith challenges, term 17. That term prohibits Gouldsmith from having a sexual relationship with another person who has children under sixteen years of age without Gouldsmith having obtained prior permission from the court and his treatment provider. Gouldsmith again contends that this probation condition violates his constitutional rights as articulated in, *inter alia*, *Lawrence* and *Casey*. Gouldsmith acknowledges that a court may properly impose reasonable conditions of probation that restrict a probationer's access to children. *See McVey v. State*, 863 N.E.2d 434, 449 (Ind. Ct. App. 2007) (noting that "probation conditions that reduce the potential for access to children are reasonable"), *trans. denied*. However, he contends that the condition at issue here is unduly restrictive of his rights and is vague.

We agree with Gouldsmith that the condition is overly broad, but on a different basis from that which he presents. The probation condition at issue provides that Gouldsmith may not engage in a "sexual relationship" with someone who has a child aged sixteen years or less without prior permission from the court and a treatment provider. (Appellant's App'x at 56.) This provision would

encompass a wide variety of relationships, notably an incidental or one-time sexual encounter with another adult when Gouldsmith would and could have no knowledge of the person's family status or of their children. Because it lacks sufficient clarity to put Gouldsmith on notice of what circumstances he should avoid, the provision is overly broad. We accordingly remand for clarification of this provision.

# Conclusion

[31] Gouldsmith has waived review of the trial court's denial of his for-cause challenges to certain members of the jury venire. Portions of the probation conditions imposed upon Gouldsmith are overly broad, and we accordingly remand the case for clarification of these provisions.

[32] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Robb, J., concur.