FILED

Aug 07 2019, 8:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Michael J. Woody
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael E. O'Neill
Michelle P. Burchett
Schererville, Indiana

Karl L. Mulvaney
Nana Quay-Smith
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harold D. Wallick,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Eric B. Inman, M.D.,<br>*Appellee-Defendant.* | August 7, 2019<br><br>Court of Appeals Case No.<br>18A-CT-2519<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Patrick J. Dietrick, Judge<br><br>Trial Court Cause No.<br>49D12-1601-CT-847 |

**Altice, Judge.**

Harold Wallick brought a medical malpractice action against his anesthesiologist, Eric B. Inman, M.D., and a jury rendered a verdict in favor of Inman. On appeal, Wallick challenges the jury selection process, arguing that the trial court should not have denied six of his for-cause challenges to

prospective jurors. He raises two issues that we consolidate and restate as: Was the trial court's decision to deny one or more of the for-cause challenges illogical and arbitrary?

[2] We affirm.

## Facts & Procedural History

[3] In April 2013, Wallick filed a Proposed Complaint with the Indiana Department of Insurance alleging that Inman negligently administered general anesthesia during a cardiac ablation procedure and that, as a result, Wallick suffered a stroke and vision loss. A Medical Review Panel reviewed the submissions and decided that Inman met the standard of care in treating Wallick. Thereafter, in January 2016, Wallick filed a medical malpractice complaint in state court, and the case proceeded to a nine-day jury trial before the Honorable Patrick Dietrick in September 2018.

[4] After the court's opening remarks and party introductions, the potential jurors took an oath, as required by Ind. Jury Rule 13, to honestly answer each question asked by the court or counsel during jury selection. The trial court collectively asked the potential jurors a series of questions. For instance, the court asked whether any of them was related to or had relationships with any of the parties, attorneys, or witnesses, had heard about the case or the claims of the parties, had "any bias for or prejudice against any of the parties to this case," or had any preconceived opinions concerning the parties, the case, or its outcome. *Transcript* at 11-12. No one responded in the affirmative. The trial

court also advised the juror pool that each chosen juror would be required to take an oath to "decide this case fairly and impartially without bias or prejudice on the evidence received during the trial and in accordance with the instructions of the court" and asked if any person felt that he or she could not abide by such an oath. *Id.* at 15. None of the potential jurors at issue in this appeal responded to the court.

[5] Pursuant to J.R. 14(a), requiring the trial court to introduce the case, Judge Dietrick informed the jury panel about the nature of the case and issues to be decided, stating:

> In this case, Plaintiff Harold Wallick has sued Defendant Eric B. Inman, M.D. Mr. Wallick claims that Dr. Iman committed malpractice by failing to use the degree of care and skill that a reasonably careful, skillful, and prudent anesthesiologist would use under the same or similar circumstances. Mr. Wallick further claims that Dr. Inman's conduct was more likely than not a responsible cause of Mr. Wallick's permanent brain injury, profound decrease in field of vision, compromised ability to get around due to vision loss, and other harms and losses of the nature requiring reasonable compensation. *Mr. Wallick has the burden to prove his claims by a greater weight of the evidence.* Defendant Eric B. Iman, M.D. denies the Plaintiff's allegations of malpractice. *Dr. Inman has no burden to disprove the Plaintiff's claims.* In this case, specifically, Dr. Inman contends that he acted in accordance with the applicable standard of care in providing anesthesia to Mr. Wallick on June 28, 2011. Dr. Inman further contends that no action or omission on his part was the responsible cause of any of the injuries o[r] damages claimed by the Plaintiff. Dr. Inman further disputes the extent and severity of the injuries and damages as claimed by the Plaintiff. That, ladies and gentlemen, are the issues in this cause.

The jury in this case will consist of six jurors and two alternates. At this time, the attorneys will be allowed to ask questions of those persons seated in the jury box as potential jurors. After both attorneys have had an opportunity to question the prospective jurors, they are permitted to strike or otherwise excuse persons from the jury.

*Transcript* at 22-23 (emphases added).

[6] Wallick's counsel began questioning of the first panel, which consisted of the following fourteen potential jurors: Alcorn, Wynne, Dick, Walters, Harris, Mannon, Curtis, Ridner, McCalep, Knox, Bright, Wright, Biddle, and Thrash. Among other things, Wallick's counsel asked whether anyone had feelings about medical malpractice cases and whether suing a doctor for money "leaves a bad taste[.]" *Id*. at 26-27. He also asked the fourteen seated prospective jurors if any of them were leaning toward the doctor's side before evidence was presented. Wallick's counsel reminded the prospective jurors that this was not a criminal case, where the burden of proof was beyond a reasonable doubt, and explained that this was a civil case, where the burden of proof is "more likely true than untrue; the greater weight of the evidence." *Id*. at 58. He discussed the burden of proof as follows:

[L]et me ask you about the burden of proof, in the criminal case and the judge told you this isn't a criminal case. In a criminal case, the case has to be proven beyond a reasonable doubt. Basically, you have to be sure as a juror that the person committed the offense or you should find them not guilty. In a civil case like this, the burden of proof is more likely true than untrue; the greater weight of the evidence, which is 51-49. So I competed in powerlifting so I use analogies of the greater weight

of the evidence, so if you've got 1,000 pounds of evidence, then if 501 pounds is in the patient's favor then the patient is going to win, or 100 pounds 51 to 49. Let's say, you know, some folks think that's okay if you're talking about minor injuries, a little money, but if the damages are several million dollars or a very significant injury, a lot of folks think it's too easy for a patient to come in and only have to prove the case just by the greater weight of the evidence. Who feels like the patient – the greater weight of the evidence is a little unfair from the doctor's side? The patient should have to prove it by more than 51-49? . . . *What would you want to see me prove in this case in order to satisfy you to find in favor of the patient*? Should it be 90-10 or 80-20 or where would you start? Or do you think the criminal standard would be better, that it would be appropriate for malpractice cases?

*Id.* at 58-59 (emphasis added).

[7] Wallick's counsel then began to ask the jurors individually about the burden of proof. Juror Wright liked the criminal standard of beyond a reasonable doubt. *Id*. at 59. Juror Walters did not think 51-49 "is very fair" and felt the case needed to be "very strong." *Id*. She would want the winner to be just under beyond a reasonable doubt or around 90%. Juror McCalep also felt that the evidence needed to be strong and agreed with Wallick's counsel when he asked if she would require plaintiff to prove his case by 90-95% instead of "51 to 49." *Id*. at 61. Juror Biddle felt that the greater weight needed to be more than 51% and that the percentage should be 75%. Juror Bright felt 60% was reasonable. Juror Curtis felt the "51-49" characterization was arbitrary and that he could not award damages for a case that is more likely true than untrue. *Id*. at 66. Wallick's counsel asked Juror Alcorn if he would want the plaintiff to prove his

case by more than "the greater weight of the evidence," and Alcorn said that he would want the plaintiff to prove his case by "90-95," as the greater weight of the evidence would not be enough proof to satisfy him. *Id*. at 71. Juror Wynne did not feel that "51-49" would be enough for her to find in favor of Wallick and felt she would need "[p]robably 75 or over." *Id*. at 72. Juror Ridner said he would want "80-90% at least." *Id*. Juror Dick said he would need plaintiff to prove his case "100%." *Id*. at 73. Throughout this line of questioning to the various potential jurors, Wallick's counsel would sometimes ask if it was the juror's "final answer." *Id*. at 61, 66-67, 71, 72, 74.

[8] Dr. Inman's counsel asked for and received a sidebar conference, during which he stated his intent to ask for a mistrial, arguing:

> What I've seen happen over the course over one, two, three, four, five, six, seven, eight, nine, ten, out of the fourteen people, this is pure and simple jury nullification. This whole percentage, there is no law. You're going to instruct them.

*Id*. at 74. After stating that it had been "waiting for the objection[,]" the trial court stated that it would be asking questions and following up with each of the potential jurors. *Id*. The court then engaged in the following exchange with Wallick's counsel:

> COURT: [Y]ou make a challenge for cause right now, I'm not granting it. I'm going to ask those questions. You don't instruct these jurors. I do.
>
> COUNSEL: Oh I understand that.

COURT: . . . You've planted it in their minds something that you think is going to be an instruction and it's not going to be an instruction. I will instruct them on the burden of proof and if they tell me under oath that they can follow my instructions, they are not being kicked. Do you understand that?

COUNSEL: Yes.

*Id.* at 76.

[9] After Wallick's counsel completed his questioning, the trial court asked questions as follow-up to Wallick's voir dire, including the following:

[T]he court has a few questions. The first one is to all of you. Can you listen attentively to the evidence; can you apply the law in obedience to the instructions given to the facts which you find may exist and can you reach a verdict which is fair and impartial as to each part of this controversy? Does everyone understand that? Does everyone understand that question? You're going to get instructions from the court, okay? *So [Wallick's counsel] was asking you questions regarding burden of proof and your personal feelings on burden of proof and there were percentages thrown out. Does everyone remember that line of questioning? The court's question is this: I'm going to instruct you as to what the burden of proof is. So it is the judge instructing you on the law. Can you all follow my instructions? Will you put aside your personal beliefs as to burden of proof and follow the law as I instruct?* Can everyone do that? Can anyone not do that?

*Id.* at 82-83. After engaging in dialogue with Juror McCalep, the court again asked the seated prospective jurors if they could "put aside personal beliefs to certain issues with respect to burden of proof and standard of care and follow

the instructions I give you[,]" affirmatively asking "is there anyone that can't do that?" *Id*. at 83. The response was silence.

[10] Based on the answers each had given regarding burden of proof, and what they felt they would need to find in order to find in plaintiff's favor, Wallick's counsel challenged for cause the following nine of the initial fourteen prospective jurors: Alcorn, Wynne, Dick, Curtis, Ridner, McCalep, Wright, Biddle, Walters. In a sidebar, the trial court engaged in the following exchange with Wallick's counsel:

> COURT: Without having had instruction from the court, you asked them their belief.
>
> COUNSEL: Right.
>
> COURT: They stated their beliefs.
>
> COUNSEL: They told me I would have to prove the case, some of them said beyond a reasonable doubt and some of them said 100%. I mean the burden of – I can't try the whole case and give them all the instructions but the burden of proof in this case is the greater weight of the evidence so it's just 51 to 49. That's not an arbitrary number. That's the instructions the court is going to give.
>
> COURT: And we're going to see if these panelists can under oath state to the court that they will follow the instructions that I give them. Once again-
>
> COUNSEL: I'm not disputing that they can say that they can follow the instructions of the court, but I think the court needs to

explain to them, you know, you were asked if you could decide this case based on the greater weight of the evidence which is-

COURT:  Which has not been defined or put into instructions yet.

* * *

COURT:  So if I ask them if- will they follow the instructions that I give them when I give them the instructions, not questions from counsel during voir dire and they say "Yes," that's the answer I'm going for.

COUNSEL:  Your Honor, I defined burden of proof-

* * *

COURT:  It's not your place to define anything to them during voir dire, especially not an instruction of the court.  The rule of law that the court is going to give on the burden of proof in this case, it's not your burden to prove The Indiana Supreme Court or jury instructions say –

* * *

COUNSEL:  Your Honor, I am [sic] instructed them appropriately on what the burden of proof is.

COURT:  You don't instruct them.  I do.

*Id*. at 88-90.  The court then individually asked each one of the nine challenged jurors whether they would be able to put aside their personal beliefs and follow

the instructions as given by the trial court, including but not limited to those with respect to the burden of proof. Six answered in the affirmative – Alcorn, Walters, Curtis, Ridner, Wright, and Biddle – and the trial court denied Wallick's for-cause challenges to those prospective jurors. Based on answers given by Jurors Wynne, Dick, and McCalep, the trial court granted Wallick's request and struck those three for cause, replacing them with Jurors Newton, Liput, and Hunter.

[11] The trial court gave Wallick's counsel time to question the new prospective jurors, and thereafter, he made for-cause challenges of Jurors Newton and Hunter because Juror Newton stated that she would feel more comfortable with a beyond-a-reasonable-doubt burden and "would need to know that there was a lot of proof[,]" and Juror Hunter said he would need a higher burden of proof than the greater weight of the evidence. *Id.* at 106, 111-12. The trial court conducted follow-up questions, asking each if he or she, upon being instructed by the court on the applicable burden of proof, could put aside a personal opinion or feeling regarding burden of proof and follow the court's instruction as to the applicable burden of proof. Juror Hunter said he would follow the court's instructions, and Wallick's for-cause challenge of Hunter was denied. Juror Newton did not agree that she could follow the court's instructions, and the trial court granted Wallick's challenge and struck Newton. With regard to the denied challenges, Wallick's counsel argued to the court in a sidebar that "how can they know if they can follow the court's instruction [when] they don't know what that burden of proof instruction is[,]" to which the trial court

responded, "They never know until they're instructed and you've given what I think is probably an impermissible burden of proof by interjecting percentages and yard lines[.]" *Id.* at 119-20.

[12] The court replaced Juror Newton with Gregory and allowed Wallick's counsel to question Gregory, who said he was not fond of attorneys or doctors, suspects lawsuits in general are frivolous, and did not want to be there. Wallick made a for-cause challenge to Juror Gregory, which the trial court denied.[1]

[13] Inman's counsel began his voir dire examination, reminding the potential jurors:

> Judge Dietrick is going to read you the legal instructions and tell you what the law is. You're going to take an oath to follow that law. That's kind of a lot of the debate we've had today about what is the burden of proof and what does that mean. Judge Dietrick will tell you that. The facts, you are the judges of the facts.

*Id.* at 126. Among other things, Inman's counsel asked the potential jurors whether they thought it was fair to hear all the evidence, i.e., all sides of the story, before making a decision and whether they had or knew someone with high blood pressure or who had suffered a stroke. He also individually asked the prospective jurors – Ridner, Hunter, Knox, Bright, Wright, Biddle, Thrash,

---

[1] In a sidebar with counsel, the trial court observed, and we agree, that if "not wanting to be here" constituted for cause, "then we would never seat a jury." *Transcript* at 124.

Curtis, Mannon, Harris, Walters, Liput, Gregory, and Alcorn – whether each could leave sympathy outside the jury room and base the case on the law that the judge would give them and the evidence and witness testimony. All replied in the affirmative, except for Juror Gregory, who said he did not know if he could. Counsel for Inman made no for-cause challenges.

[14] Counsel for Wallick renewed his challenge to Juror Gregory for cause, arguing that Gregory expressly stated that he did not think he could pay attention to all the evidence because he was in an environment that he did not want to be in. The trial court asked Juror Gregory if he suffered from any physical or mental disability that would prevent him from rendering satisfactory jury service, and he replied that he did not. The trial court denied Wallick's for-cause challenge as to Juror Gregory.

[15] Thereafter, the parties each made three peremptory strikes. Wallick struck: Gregory, Wright, and Ridner; Inman struck: Bright, Curtis, and Knox. The jury was comprised of: Alcorn, Liput, Walters, Harris, Mannon, and Hunter. Biddle and Thrash were accepted as alternates by Inman, but Wallick renewed a motion to strike Biddle for cause, which the court denied. Wallick now appeals.

## Discussion & Decision

[16] Wallick made twelve for-cause challenges, of which the trial court granted four and denied eight. Six of those eight denials are at issue in this appeal. The right to a fair trial before an impartial jury is a cornerstone of our criminal

justice system. *Whiting v. State*, 969 N.E.2d 24, 28 (Ind. 2012). A constitutionally impartial juror is one who is able and willing to lay aside his or her prior knowledge and opinions, follow the law as instructed by the trial judge, and render a verdict based solely on the evidence presented in court. *Id.* "Removing prospective jurors – whether peremptorily or for cause – who cannot perform these tasks is the mechanism parties and trial courts use to achieve an impartial jury." *Oswalt v. State*, 19 N.E.3d 241, 245-46 (Ind. 2014).

[17] The trial court has broad discretionary power in regulating the form and substance of voir dire examination. *Hadley v. State*, 496 N.E.2d 67, 72 (Ind. 1986). Ind. Trial Rule 47(D) governs the examination of jurors and provides:

> The court shall permit the parties or their attorneys to conduct the examination of prospective jurors, and may conduct examination itself. The court's examination may include questions, if any, submitted in writing by any party or attorney. If the court conducts the examination, it shall permit the parties or their attorneys to supplement the examination by further inquiry. The court may impose an advance time limitation upon such examination by the parties or their attorneys. At the expiration of said limitation, the court shall liberally grant additional reasonable time upon a showing of good cause related to the nature of the case, the quantity of prospective jurors examined and juror vacancies remaining, and the manner and content of the inquiries and responses given by the prospective jurors. The court may prohibit the parties and their attorneys from examination which is repetitive, argumentative, or otherwise improper but shall permit reasonable inquiry of the panel and individual prospective jurors.

[18]    Peremptory challenges give parties the nearly unqualified right to remove any prospective juror they wish, restricted only by the parties' finite allotment of challenges and the constitutional ban on racial, gender, and religious discrimination. *Oswalt*, 19 N.E.3d at 246. A peremptory challenge is often exercised on "hunches and impressions" and parties generally are not required to explain their reasons for exercising a peremptory challenge. *Id*. For-cause challenges, by contrast, are available to exclude any prospective juror whose "views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)); *see also Gibson v. State*, 43 N.E.3d 231, 239 (Ind. 2015). There are no limits on the number of for-cause challenges, but each must be supported by specified reasons that demonstrate that, as a matter of law, the venire member is not qualified to serve. *Oswalt*, 19 N.E.3d at 246.

[19]    Indiana Jury Rule 17 identifies a number of circumstances in which the trial court in a civil or criminal case "shall sustain" a challenge for cause, including if the prospective juror:

> (3) will be unable to comprehend the evidence and the instructions of the court due to any reason including defective sight or hearing, or inadequate English language communication skills;
>
> (4) has formed or expressed an opinion about the outcome of the case, and is unable to set that opinion aside and render an impartial verdict based upon the law and the evidence;

* * *

> (8) is biased or prejudiced for or against a party to the case[.]

[20] We afford substantial deference to trial judges regarding the decision to grant or deny a challenge for cause, as the trial court has the unique opportunity to observe and assess the demeanor of prospective jurors as they answer the questions posed by counsel. *Oswalt*, 19 N.E.3d at 245; *Gibson*, 43 N.E.3d at 239. We will reverse the trial court's decision on a for-cause challenge "only when it is 'illogical or arbitrary.'" *Oswalt*, 19 N.E.3d at 245 (quoting *Whiting*, 969 N.E.2d at 29); *see also Merritt v. Evansville-Vanderburgh School Corp.*, 765 N.E.2d 1232, 1235 (Ind. 2002).

[21] Here, Wallick asserts that the trial court erred when it denied his for-cause challenges to the following six individuals: Alcorn, Gregory, Walters, Ridner, Hunter, and Wright.[2] He explains that five of those six "would require Wallick to prove his case by more evidence than the law required[,]" and two of the five "indicated they were leaning in favor of Inman before hearing any evidence." *Appellant's Brief* at 5. The remaining for-cause challenge, as to Juror Gregory, was based on Gregory's voir dire responses – stating that he was not fond of attorneys or doctors, hates court, and did not think he could listen to all the evidence – which Wallick claims reflects a "stated inability to discharge his

---

[2] For clarification, we note that Gregory, Ridner, and Wright were stricken through Wallick's peremptory challenges and did not serve on the jury.

duties as a civil juror." *Id*. Wallick claims that the trial court's denial of his requests to strike those six prospective jurors for cause was illogical and arbitrary and denied him a fair trial.

[22] We first address the five potential jurors who Wallick claims took the position that they would require him to prove his case by more than the law requires, that is, more than the greater weight of the evidence. As an initial matter, we observe that the questions that Wallick's counsel posed regarding burden of proof were asked in terms of what the person would require/prefer/be comfortable with/want to see in order to find for plaintiff, sometimes using quantified percentages such as whether the person would be satisfied with a 51-to-49 scenario. Because the individuals gave answers indicating that, to find in Wallick's favor, they would prefer or want to see a higher amount of proof, some saying something akin to beyond a reasonable doubt, Wallick's counsel asked the court to strike the five for cause. The trial court reminded Wallick's counsel that the individuals had not yet been instructed on the burden of proof or what constitutes a "greater weight of the evidence" and that what counsel was doing "by interjecting percentages and yard lines" during jury selection was not permissible. *Id*. at 119-20. The trial court thereafter individually asked each of those five (as well as others) whether he or she could set aside personal feelings or beliefs and follow the instructions and law that the court would give, including with regard to burden of proof. Each of the five jurors at issue here responded in the affirmative.

[23]   Wallick recognizes on appeal that a trial court has broad discretion to rehabilitate jurors and deny for-cause challenges, but asserts that the trial court's attempted "rehabilitation" of the jurors in this case was ineffective and only resulted in the individuals giving meaningless, empty promises. *Appellant's Brief* at 5.   Specifically, Wallick claims that the trial court's inquiry – asking the person if he or she could set aside personal biases, beliefs, and prejudices and follow instructions as given – simply posed a "magic question" that, if answered with a yes, "made the . . . veniremen's biases and prejudices disappear into thin air like they never even existed" and rendered an "otherwise incompetent" prospective juror able to serve. *Id.* at 5, 7.   He claims that "[t]he court's decisions to deny Wallick's cause challenges . . . based solely on the biased jurors' affirmative responses to the court's 'magic question' were arbitrary and illogical" because "the magic question" fails to remove individuals who cannot perform the task of impartial deliberations and, instead, merely keeps people on the jury who have admitted they are partial and biased. *Id.* at 15-16.

[24]   In support, Wallick refers us to various out-of-state cases which either did not allow juror rehabilitation "through these types of 'magical' questions" or took a critical view of it. *Id.* at 22.   Wallick urges that "Indiana should establish a rule that (1) bars trial courts from engaging in juror rehabilitation by using the "magic questions" and (2) requires trial courts' rehabilitation to focus on eliciting reliable testimony for determining the competence of a juror." *Id.* at 23-24.   Assuming without deciding that other jurisdictions do not allow, or take a critical view of, such manner of rehabilitation, as Wallick claims, we find that

Indiana does not preclude it, and we decline his invitation to impose such a limitation on a trial court's substantial deference in jury selection matters.

[25]     Here, the trial court individually asked each of the five jurors at issue if he or she could set aside personal beliefs or opinions and follow the court's instructions that would be given, including with regard to the burden of proof. Each answered affirmatively. The trial court observed these jurors, and "we will not second guess its determination that they were sincere" in indicating they would follow the court's instructions. *See Gibson*, 43 N.E.3d at 240 (affirming trial court's denial of for-cause challenges to two jurors, one with regard to his answers concerning appropriate penalty for murder and another regarding her sympathy for elderly or young victims, noting "trial court observed these jurors' assurances of impartiality"). Based on the record before us, we find that the trial court did not act illogically or arbitrarily when it denied Wallick's for-cause challenges to the five individuals who initially indicated they would want or prefer to see a higher burden of proof than the required "greater weight of the evidence" standard applicable in medical malpractice cases. *See e.g.*, *Timberlake v. State*, 690 N.E.2d 243, 262 (Ind. 2003) (holding no error in denying for-cause challenge to prospective juror who initially stated she would prefer to hear defendant testify, might have difficulty considering mitigation, and might be biased against someone who committed murder, but also stated that, though she might not like the law, she would follow the law as instructed), *cert. denied* 525 U.S. 1072 (1999).

[26] The sixth and final for-cause challenge that Wallick appeals is that of Juror Gregory, who testified that he hated court and was not fond of doctors and lawyers. We appreciate the grain of truth in the lighthearted comment that Wallick's counsel made to Gregory: "You dislike both sides equally? You're the perfect juror." *Transcript* at 122. Because Juror Gregory also stated that he would find it hard to pay attention to all the evidence, counsel for Wallick renewed his motion to strike Gregory for cause. The trial court asked Juror Gregory if he suffered from any physical or mental disability that would prevent him from rendering satisfactory jury service, and he replied that he did not. The trial court was within its discretion to deny Wallick's for-cause challenge to Gregory.

[27] It cannot be disputed that the trial court in this case gave considerable leeway to Wallick's counsel, allowing over ninety minutes of questioning and then posing its own follow-up inquiries to Wallick's twelve for-cause challenges (nine of the fourteen in the initial panel and three of the four replacements). Notably, the court struck four potential jurors whose answers reflected that he or she could not follow the instructions as given. The trial court devoted a generous amount of time to jury selection in order to make sure each person, including those challenged for cause, was competent to sit on the jury. We find no abuse of the court's substantial discretion and conclude that the trial court did not act illogically or arbitrarily when it denied the six for-cause challenges at issue.

[28] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.