

**FILED**

Feb 08 2019, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tracie Easler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 8, 2019

Court of Appeals Case No.
18A-CR-1371

Appeal from the Marion Superior
Court

The Honorable Peggy Ryan Hart,
Pro Tempore

Trial Court Cause No.
49G10-1707-CM-25008

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Tracie Easler (Easler), appeals her conviction for operating a vehicle while intoxicated endangering a person, as a Class A misdemeanor, Ind. Code § 9-30-5-2(a)&(b).

We affirm.

# ISSUES

Easler presents this court with two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion when it failed to grant Easler's request to question a member of the *venire* after the member divulged information relevant for the *voir dire*; and

(2) Whether the trial court abused its discretion in denying Easler's request to remove a juror for cause.

# FACTS AND PROCEDURAL HISTORY

Around 3:00 p.m. on July 6, 2017, emergency medical services (EMS) and firefighters were dispatched to 38th Street and Shadeland on a report of an unconscious person behind the wheel of an SUV. When the first responders arrived at the scene, they found the vehicle still running and in gear as it sat in the turn lane. The driver, later identified as Easler, had her head down and hands in her lap. Easler remained unresponsive as EMS personnel knocked on the window and yelled. While they were trying to gain Easler's attention, the SUV started to roll into the intersection of 38th and Shadeland. Firefighters

quickly reacted and broke the driver's side window; they reached inside the vehicle and shifted it into park. Easler regained consciousness and EMS personnel helped her out of the vehicle.

[5] Officer Eric Rosenbaum (Officer Rosenbaum) of the Indianapolis Metropolitan Police Department consulted with the EMS personnel and was advised that Easler might be impaired. When speaking with Easler, Officer Rosenbaum learned that she had just left a funeral and was on her way home. She informed the officer that she was having a rough week and had consumed two shots earlier that day. While Officer Rosenbaum was speaking with Easler, he noticed Easler's speech was slurred and there was a delay in her responses to his questions. He observed that she had glassy, red eyes. Believing Easler to be under the influence of alcohol, Officer Rosenbaum contacted a DUI officer.

[6] Officer Nickolas Smith (Officer Smith), after noticing Easler swaying back and forth, administered three field sobriety tests. Easler failed all three tests. Easler consented to a blood draw, and forensic testing of her blood revealed that she had a blood alcohol concentration of 0.256 to 0.283 grams per 100 milliliters of blood.

[7] On July 7, 2017, the State filed an Information, charging Easler with Count I, operating a vehicle while intoxicated endangering a person, as a Class A misdemeanor; and Count II, operating a vehicle with an alcohol concentration equivalent to .15% or more, as a Class A misdemeanor. On April 30, 2018, the trial court conducted a jury trial. Prior to commencing *voir dire*, the trial court

swore in the prospective jurors and informed them of the charges. After *voir dire* was conducted and both parties had exercised their peremptory strikes, six individuals were selected to sit on the jury. When the trial court called out the six jurors' names, Juror 4 asked the trial court, "Are those—they're not going to ask us any more questions that are relevant?" (Supplemental Transcript, p. 29). The trial court denied that there were more questions and removed the jurors to the jury room.

[8] After an alternate was selected, the trial court informed the parties that Juror 4 had written a note to the court, which stated,

> A family member was killed by a drunk driver. It was before I was born. But altered my family, and my family dynamic. I can be a jury member but thought it relevant to disclose.

(Suppl. Tr. p. 35). After the trial court read the letter, defense counsel asked to "bring her out, and question her as to whether she would be fair and impartial." (Suppl. Tr. p. 35). The trial court disregarded defense counsel's request and stated, "Oh, okay. So I just thought I'd share that with you, okay. But I don't think there's anything else we can do. All right." (Suppl. Tr. p. 36).

[9] After the remaining prospective jurors were released and had exited the courtroom, the trial court again noted for the record Juror 4's letter and confirmed the seating of an alternate juror. Defense counsel then requested to bring up one more thing for the record. The following colloquy occurred:

[DEFENSE COUNSEL]: Just in looking at her juror questionnaire, there's parts that discuss victims of crimes and what not. [S]he said that her grandmother was the victim of murder, but, she did not disclose anything else. So, whether she disclosed anything besides the fact that [] violent crimes made her partial to the victim—so, and I'm not completely sure, that she was completely—forthcoming on her questionnaire. But, that—I just wanted to put that on the record.

[TRIAL COURT]: [] All right, State, what's going on?

[STATE]: [M]y response is that I do believe that she was forthcoming. Looking at the comment under "Your Ability to Serve as a Juror"—her comment was to - - Can you be a fair and impartial juror in a criminal trial?" She has stated potentially— depends on nature, violent crimes tend to be—tend to make me partially a victim because I've seen effect in families. [T]his echoes her comment to the court; and furthermore, this is potentially depends on nature, comma [sic]. I think that's broader than just pending it down to violent crimes. So I think there was enough, [], the juror being forthcoming in this questionnaire. [A]nd furthermore in the comment to the court, she did say that she could be fair and impartial. But that she wanted to disclose this so everybody was made aware in particular.

[TRIAL COURT]: Okay. All right. So, I'm not even quite sure there was even a motion before this court. Was there a motion?

[DEFENSE COUNSEL]: Well, I would—I'd ask that she be excluded as a juror, but for not being forthcoming on the questionnaire in terms of [] being picked.

[TRIAL COURT]: All right, motion denied. Court finds the same, that [] in her questionnaire she said can you be fair and

impartial. And she said possibly. It depends on the nature [] of the offense; and so I mean that's something that could have been explored during *voir dire* process. And for whatever reason, you know, it wasn't explored to such a fine detail. So, I also think that even in my opening remarks I talk about we're obtaining a fair and impartial jury for this particular case. I also [] think within the first two (2) minutes of my greeting, I told them, what this case was about. [S]o again, I think that's something that could have been explored by the attorneys on *voir dire*. So, court's going to find that, --and she didn't say that she couldn't be fair and—she couldn't be fair. So, therefore, [], she'll remain as Juror Number Four (4). []

(Suppl. Tr. pp. 37-39).

[10] At the conclusion of the trial, the jury found Easler guilty as charged; however, the trial court merged Count II into Count I and entered judgment of conviction on operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. On May 14, 2018, the trial court sentenced Easler to 365 days, with 120 days executed in the Marion County Community Corrections' home detention and 245 days suspended to supervised probation.

[11] Easler now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Hearing Request*

[12] "The right to trial before an impartial jury is a cornerstone of our justice system." *Whiting v. State*, 969 N.E.2d 24, 28 (Ind. 2012). Because "the presence of even one biased juror on the jury is structural error requiring a new

trial," Easler maintains that, when confronted with evidence of potential juror bias, a trial court should hold a hearing to ensure a defendant's rights are protected. *See id.* Easler contends that the trial court abused its discretion by denying her request to further question Juror 4, when her note to the trial court revealed a potential bias. Generally, proof that a juror was biased against the defendant or lied on *voir dire* entitles the defendant to a new trial. *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind. 1988). A defendant seeking a hearing on juror misconduct must first present some specific, substantial evidence showing a juror was possibly biased. *Id.* In order to warrant a new trial, there must be a showing that the misconduct was gross, and that it probably harmed the defendant. *Id.* The issue of juror misconduct is a matter within the trial court's discretion. *Id.*

[13] Pointing to the letter written by Juror 4, Easler interprets the writing as an indication of a potential bias and claims that Juror 4 must therefore have engaged in juror misconduct by failing to provide full and truthful answers on her questionnaire.[1] Easler points out that Juror 4 only stated on her questionnaire that her grandmother had been a victim of murder and violent crimes made her partial to the victim, but she did not disclose anything else. Easler maintains that upon being notified that a member of Juror 4's family was

---

[1] We note that the juror questionnaires are not part of the record on appeal. Easler's counsel informed this court that the bailiff for Court 10 shreds the questionnaires and therefore it was unavailable to become part of the record before us. As the trial court referred to the content of Juror 4's questionnaire during the hearing, we will rely on the court's remarks.

killed by a drunk driver, new concerns arose that the Juror may have been referring to her grandmother and had failed to disclose that. Accordingly, Easler asserts that she was entitled to a hearing to further explore Juror 4's potential bias.

[14] In support of her argument that a hearing should have been conducted, Easler relies on *Stevens v. State*, 357 N.E.2d 245 (Ind. 1976), and *Barnes v. State*, 330 N.E.2d 743 (Ind. 1975). In *Stevens* and *Barnes*, the parties discovered that jurors had either inaccurately responded or lied in response to questions in *voir dire* regarding their relationships with certain individuals affiliated with the prosecution or the defense. *Stevens*, 357 N.E.2d at 246; *Barnes*, 330 N.E.2d at 325. In *Barnes*, when asked if a juror had any friends or relatives on the prosecutor's staff, the juror responded, "no." *Barnes*, 330 N.E.2d at 325. Later, it was discovered that the juror was married to a member of the prosecutor's staff who was involved to a slight degree in Barnes' trial. *Id*. The supreme court held that if a prospective juror gave inaccurate responses to *voir dire* questions, the defendant may challenge the juror for cause, and the trial court shall hold a hearing to determine whether the juror is biased and warranted a new trial. *Id*. at 326. The court explained that, irrespective of the fact that the juror might not have been aware of the relationship at the time of the *voir dire*, the potential for future bias remained and therefore a hearing was appropriate. *Id*.

[15] In *Stevens*, the trial court conducted a hearing when it was notified that a juror, who had denied any previous knowledge of the case during *voir dire*, had in fact

discussed the case with another juror after being sworn in. *Stevens*, 354 N.E.2d at 246. Our supreme court reaffirmed *Barnes* and concluded that the possibility of bias was sufficient to require that the defendant be afforded an opportunity to explore the juror's prejudices so as to challenge for cause if bias existed. *Id*. at 402.

[16] However, in light of our supreme court's decision in *Lopez*, decided about a decade after *Stevens* and *Barnes*, we find Easler's reliance on the two latter cases misplaced. In *Lopez*, our supreme court held that the hearing requirement of *Barnes* and *Stevens* is not triggered unless the defendant offers specific, substantial evidence showing a juror was possibly biased. *Lopez*, 527 N.E.2d at 1130. The *Lopez* court found that the defendant was not entitled to a hearing on a claim of juror misconduct even though the defendant presented evidence that a juror knew the defendant prior to trial, had discussed the case with other jurors prior to deliberation, and had read newspaper articles about the case during trial, but the juror had also stated shortly before deliberations that she did not know how she was going to vote. *Id*. *See also Pugh v. State*, 52 N.E.3d 955, 972 (Ind. Ct. App. 2016) (trial court did not abuse its discretion in denying defendant's request to question two jurors he believed may be biased against the defendant after the jurors expressed concerns that the defendant was drawing pictures of them during trial).

[17] Turning to the case before us, we conclude that Easler failed to present specific, substantial evidence establishing Juror 4's bias. On her questionnaire, completed prior to being brought into the courtroom and becoming familiar

with the charges filed against Easler, Juror 4 specified that her grandmother had been a murder victim. During *voir dire*, neither party inquired into the statement or asked her any questions pertaining to Easler's charges. After she was elected to sit on the *venire* and was escorted from the courtroom, Juror 4 sent the trial court a note in which she volunteered that a family member had been killed by a drunk driver but assured the court that she could be a jury member despite her family history.

[18] We cannot equate the incompleteness of Juror 4's questionnaire with bias. While "it is the duty of each juror to answer all questions on *voir dire* fully and truthfully," Juror 4 completed the questionnaire to the best of her ability. *McFarland v. State*, 390 N.E.2d 989, 992 (Ind. 1979). It was not until she arrived in the courtroom and was informed by the trial court about the specific charges that she became aware of other relevant information, which she conscientiously divulged to the parties in the only way possible at that time. This disclosure, coupled with the affirmation that she could remain on the jury despite her background, resolved the need for any questioning as the trial court had educated the panel that to be a jury member, the person must be free from "bias, [and] prejudice[.]" (Tr. p. 14). Accordingly, as the note did not provide the specific, substantial evidence of bias required to trigger a hearing under *Barnes* and *Lopez*, the trial court did not abuse its discretion by declining Easler's request to further question Juror 4.

## II. *Removal for Cause*

[19]     Next, Easler contends that she was denied the right to a fair trial because the trial court abused its discretion in denying her challenge for cause as to Juror 4. "Our justice system depends on jurors who appreciate the gravity of the cases they are called upon to try, so long as they demonstrate a commitment to impartiality and a willingness to dutifully follow the court's instructions." *Oswalt v. State*, 19 N.E.3d 241, 250 (Ind. 2014). In *Oswalt*, our supreme court reiterated: "The Federal and Indiana Constitutions guarantee the right to an impartial jury" and explained how the mechanism of prospective juror removal is used to achieve an impartial jury. *Id*. at 245-56. Peremptory challenges give the parties the nearly unqualified right to remove any prospective juror they wish, restricted only by the finite allotment of challenges and the constitutional ban on racial, gender, and religious discrimination. *Id*. at 246. The exercise of peremptory challenges is not subject to the trial court's control, and the party making the challenge is not generally required to explain the underlying reasons. *Id*.

[20]     By contrast, for-cause motions are available to exclude jurors whose views would prevent or substantially impair the performance of his or her duties as a juror in accordance with the instructions given and the oath taken and thus violate the defendant's Sixth Amendment rights. *Id*. A juror thus removed is considered an "incompetent" juror, while a juror not removable for cause but stricken at a party's wish is termed "objectionable." *Id*. Strikes for cause require trial court approval, so parties may seek appellate review of an unsuccessful for-cause motion. *Id*.

Bias may be actual or implied. Actual bias arises when a factual bias for or against one of the parties is shown to exist. *Smith v. State*, 477 N.E.2d 311 (Ind. Ct. App. 1985). Implied bias, as is claimed here, is a bias attributable by law to a prospective juror, regardless of actual partiality, due to the exercise of a relationship between the juror and one of the parties. *Alvies v. State*, 795 N.E.2d 493, 499 (Ind. Ct. App. 2003). Because such biases can be difficult to ascertain on a paper record, we pay considerable deference to the trial court, who has the unique opportunity to "assess the demeanor of prospective jurors as they answer the questions posed by counsel." *Oswalt*, 19 N.E.3d at 245. We thus review the trial court's ruling on a for-cause challenge for an abuse of discretion. *Id.* Error is found only if the decision is illogical or arbitrary. *Id.*

Having exhausted her peremptory challenges, Easler challenged Juror 4 "based on her failure to provide full and truthful answers on her questionnaire." (Appellant's Br. p. 21). Had she timely revealed the information that one of her family members had been killed by a drunk driver, Easler alleges that she then could have explored any possible bias during *voir dire*.

However, the record does not support that Juror 4 deliberately withheld this information or provided untruthful information on the questionnaire or during *voir dire*. Rather, the evidence supports that Juror 4 was forthcoming about her family history at the earliest opportunity after she learned that the case involved a driver who operated a vehicle while intoxicated. Neither party asked any questions during *voir dire* whether the prospective jurors had been victims of drunk-driving incidents, or if they knew or were related to anyone who had

been a victim. Because Juror 4 disclosed the information voluntarily at her earliest opportunity, even after counsel wholly failed to ask any questions pertaining to drunk driving, and then assured the parties that she could still be a juror, Easler has fallen short of establishing bias, misconduct, or partiality by Juror 4. Accordingly, as Easler's jury was fair and impartial, we affirm her conviction.

## CONCLUSION

[24] Based on the foregoing, we conclude that the trial court properly denied Easler's request to question a member of the *venire* after the member divulged information relevant for *voir dire*, and Easler was convicted by a fair and impartial jury.

[25] Affirmed.

[26] Kirsch, J. and Robb, J. concur