



FILED

Sep 20 2019, 1:57 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 19S-CR-324

## Tracie Easler,
*Appellant (Defendant),*

—v—

## State of Indiana,
*Appellee (Plaintiff).*

Argued: June 18, 2019 | Decided: September 20, 2019

Appeal from the Marion Superior Court,
No. 49G10-1707-CM-25008
The Honorable Peggy Ryan Hart, Pro Tempore

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-CR-1371

**Opinion by Justice Goff**

Chief Justice Rush and Justices David, Massa, and Slaughter concur.

**Goff, Justice.**

Deciding issues of great importance under time constraints is but one burden borne by our trial courts. However, every case is important to the parties involved and adequate time must be allocated to fairly resolve any meritorious issues presented. In this case involving charges of operating a vehicle while intoxicated, a juror—**after** being selected to serve on the jury but **before** being sworn—submitted a note informing the trial court that one of her family members had been killed by a drunk driver. Defense counsel requested an opportunity to explore the juror's potential bias, but the trial court did not allow further questioning. We conclude that the information conveyed by the juror to the trial court before the jury was sworn should have resulted in a hearing to determine whether the defendant could have properly challenged the juror's service for cause. The trial court's refusal to conduct a hearing was an abuse of discretion. Further, given the subjective nature of the information conveyed and concerns about the passage of time and potential juror harassment, we cannot say that remand for a hearing will ensure the fairness of the proceedings below. Accordingly, we reverse and remand these proceedings for a new trial.

## Factual and Procedural History

Based on an incident where emergency personnel found her unconscious behind the wheel of her SUV, the State charged Defendant Tracie Easler with two counts of operating a vehicle while intoxicated, and the case proceeded to a jury trial.

After assembling the prospective jurors, the trial court introduced the parties and explained the voir dire process, saying "the objective of the attorneys here today is to obtain a fair and impartial jury." Tr. Vol. II, pp. 12–13. *See also id.* at 12 ("Jurors must be free as humanly possible from bias, prejudice, sympathy, and must not be influenced by pre-conceived ideas as to either what the facts are, or what the law is."). At this point, the court asked all the potential jurors to stand and promise to answer any questions honestly during jury selection. The State and defense counsel

then conducted their voir dire examinations of the potential jurors. After the dust settled, the trial court announced the six-person jury, which included M.M. ("Juror 4"). Up until this time, Juror 4 had spoken only two times, answering direct questions from counsel about signs of intoxication and reasonable doubt. But when she was announced as a member of the jury, Juror 4 interjected, "Are those—they're not going to ask us any more questions that are relevant?" Supp. Tr. Vol. II, p. 29. The court informed her that questioning was over, and the bailiff escorted the six newly selected jurors from the room.

Another set of potential jurors was seated for the court and the parties to examine and select an alternate juror. Before the court announced who had been selected, it asked counsel to approach and disclosed a note that Juror 4 had given to the bailiff. The note read, "a family member was killed by a drunk driver. It was before I was born, but altered my family dynamic irreparably. I can be a jury member, but thought it is relevant to disclose." Appellant's App. Vol. II, p. 127. Defense counsel asked if Juror 4 could be brought out and questioned over whether she could be a fair and impartial juror. Supp. Tr. Vol. II, p. 35. Instead of responding to defense counsel, the court said, "I just thought I'd share that with you, okay. But I don't think there's anything else we can do." *Id.* at 36. Defense counsel did not otherwise immediately respond to the court's dismissal of Juror 4's note. The court then announced the alternate juror, had her join the other people selected as jurors, and dismissed the remaining potential jurors.

Once all the jurors and potential jurors had left the courtroom, the court returned to Juror 4's note to clarify the record. After the court summarized the note and the disclosure of the note, defense counsel challenged Juror 4 for cause, arguing that Juror 4 had not been forthcoming on her juror questionnaire when "she said that her grandmother was the victim of murder, but . . . did not disclose anything else." *Id.* at 37. The State disagreed, arguing that Juror 4 had been forthcoming. The State said that on Juror 4's questionnaire, she had explained her sympathy for victims of violent crimes as the result of seeing the effect of those crimes on families. The State also summarized Juror 4's note as saying that she could still be a fair and impartial juror,

and it noted that she had voluntarily made the parties aware of her past. The court denied the motion to remove the juror. The entire jury was then sworn in as jurors, and it found Easler guilty on both counts.

Easler appealed, claiming the trial court should have granted a hearing to discover Juror 4's possible bias and, separately, should have removed Juror 4 for cause. The Court of Appeals affirmed the trial court. *Easler v. State*, 118 N.E.3d 84, 92 (Ind. Ct. App. 2019). It rejected Easler's hearing-request argument because neither "the incompleteness of Juror 4's questionnaire" nor the note Juror 4 provided to the court "present[ed] specific, substantial evidence establishing Juror 4's bias" that would entitle Easler to a hearing. *Id.* at 90 (relying primarily on *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind. 1988)). The court explained that "Juror 4 completed the questionnaire to the best of her ability." *Id.* Juror 4 took steps to divulge the information as soon as she could, and "coupled with the affirmation that she could remain on the jury despite her background, [she] resolved the need for any questioning." *Id.* The Court of Appeals concluded that the trial court correctly declined to remove Juror 4 for cause because either party could have asked related questions during voir dire, and Juror 4 shared her information as soon as possible. *Id.* at 91–92.

We granted Easler's petition to transfer, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Generally, "[a] trial court has broad discretionary power to regulate the form and substance of voir dire." *Ward v. State*, 903 N.E.2d 946, 955 (Ind. 2009), *aff'd on reh'g*, 908 N.E.2d 595. This discretion extends to ruling on requests to question a juror regarding potential bias or misconduct. *See Lopez*, 527 N.E.2d at 1130. Error from an abuse of discretion arises in this context "if the decision is illogical or arbitrary." *Oswalt v. State*, 19 N.E.3d 241, 245 (Ind. 2014) (citation omitted).

Although a trial court exercises its discretion in regulating voir dire, Easler suggests this Court has not addressed how to secure a hearing if, after a jury is selected but before the members are officially sworn in as

jurors, new evidence emerges possibly indicating a juror's bias. This issue qualifies as a pure question of law, requiring "neither reference to extrinsic evidence, the drawing of inferences therefrom, nor the consideration of credibility questions for its resolution." *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind. 2000) (citation omitted). This Court reviews pure questions of law de novo. *Id.*

## Discussion and Decision

"The right to a fair trial before an impartial jury is a cornerstone of our criminal justice system" guaranteed by both the United States and Indiana constitutions. *Whiting v. State*, 969 N.E.2d 24, 28 (Ind. 2012) (citing U.S. Const. amend. VI and Ind. Const. art. 1, § 13). "The presence of even one biased juror on the jury is a structural error requiring a new trial." *Id.* Thus, "the trial court has 'a broad discretion and duty . . . to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality.'" *Id.* at 29 (omission in original) (quoting *Frazier v. United States*, 335 U.S. 497, 511 (1948)).

This case implicates these foundational principles by questioning how counsel can ferret out a potential juror's possible bias or misconduct when new information comes to light in the moments between a person being selected as a juror and the person being sworn in as a juror. Specifically, this case raises the following question: What is the minimum amount of new information—in terms of quality and quantity—that would require a court to hold a hearing to investigate the alleged bias or misconduct? To answer this question, we first examine our prior cases and determine whether and to what extent they apply in these contexts. Then, we analyze the facts of this case in light of the applicable legal standard.

# I. When a party requests to question a juror on possible bias, timing matters.

## A. *Barnes*, *Stevens I & II*, and *Lopez* lay the groundwork for determining when a hearing should be conducted.

Our law regarding requests for hearings to question jurors on possible bias or misconduct has been developed primarily through three cases: *Barnes v. State*, 263 Ind. 320, 330 N.E.2d 743 (1975); *Stevens v. State* (*Stevens I*), 265 Ind. 396, 354 N.E.2d 727 (1976), *aff'd on reh'g*, 265 Ind. 396, 357 N.E.2d 245 (*Stevens II*); and *Lopez v. State*, 527 N.E.2d 1119 (Ind. 1988). The parties' arguments rely on these important cases, but the parties disagree as to how these cases impact the outcome here. Before diving into the parties' arguments, we find helpful a brief review of each case's holding relating to hearings on juror bias or misconduct.

*Barnes* is the seminal case regarding hearings into possible juror bias or misconduct. In *Barnes*, we laid down the general rule that, when a party presents new information unavailable during voir dire showing possible juror bias or misconduct, the party should be able to question that juror on his or her potential bias and then challenge that juror, if warranted. 330 N.E.2d at 747. *See also Haak v. State*, 275 Ind. 415, 417 N.E.2d 321, 324 (1981) ("Because the possibility of juror bias had been raised by appellant Barnes' allegation, and because there had been no opportunity to discover this bias at the time the jury was selected, we remanded . . . [for] an evidentiary hearing."). Our later cases fill in the gaps of this general rule.

*Stevens I & II* built upon *Barnes* and provided what a hearing into possible juror bias or misconduct should look like when a party presents its new information of bias or misconduct during trial. In these situations, the trial court should conduct a hearing on the matter, outside the presence of the rest of the jurors, to see (1) if the juror was biased or not disinterested and (2) if the hearing itself caused the juror to be biased. *Stevens I*, 354 N.E.2d at 732. *See also Stevens II*, 357 N.E.2d at 246 (emphasizing the hearing requirements laid out in *Barnes* and *Stevens I*);

*McFarland v. State*, 271 Ind. 105, 390 N.E.2d 989, 993 (1979) (affirming the trial court after it held a hearing in line with *Stevens I*).

   *Lopez* then, as relevant here, clarified the general rule in *Barnes* and described the minimum evidence a party must present in certain contexts to show possible juror bias or misconduct and receive a hearing. We stated, "A defendant seeking a hearing on juror misconduct must first present some specific, substantial evidence showing a juror was possibly biased." *Lopez*, 527 N.E.2d at 1130 (citing *Berkman v. State*, 459 N.E.2d 44, 46 (Ind. Ct. App. 1984)). *See also Guyton v. State*, 771 N.E.2d 1141, 1144–45 (Ind. 2002) (relying on *Lopez*'s "specific, substantial evidence" requirement in affirming the denial of a post-trial request for a hearing on alleged juror misconduct). This "specific, substantial evidence" requirement was meant to prevent hearings on juror bias or misconduct from becoming a tool to harass jurors who had returned a guilty verdict and been discharged. *Berkman*, 459 N.E.2d at 46. Thus, *Lopez* clarified *Barnes* regarding what constitutes a showing of possible juror bias or misconduct when the new information of possible bias or misconduct comes to light after trial.

## B. The showing required for a hearing under *Barnes* and *Stevens I & II* before the jury is sworn is less than that described in *Lopez*.

   Having summarized these guiding cases concerning hearings into possible juror bias, we now address the parties' arguments, both of which are centered on *Lopez*. Easler contends that *Lopez* does not apply here because her hearing request was made before the jury was sworn in—not after trial—and that she should have been given a hearing. On the other hand, the State argues that the *Lopez* "specific, substantial evidence" requirement applies and was not met. Thus, the State concludes, Easler was not entitled to a hearing on Juror 4's alleged bias. We agree with Easler that *Lopez* does not apply here, and we conclude that the burden to show a possibility of juror bias or misconduct and thus receive a hearing under *Barnes* and *Stevens I & II* is lower before the jury is sworn in than it is after trial.

*Lopez*'s "specific, substantial evidence" requirement does not apply here where Easler requested a hearing on Juror 4's possible bias before she had been sworn in as a juror. As noted above, the "specific, substantial evidence" requirement was developed as a bulwark against post-trial juror harassment. *See Berkman*, 459 N.E.2d at 46. If jurors who returned a guilty verdict and were discharged could be hauled back to a hearing about their alleged bias or misconduct based on mere blanket or conclusory allegations, there would be a very real risk of juror harassment. There would also be the potential for a flood of frivolous collateral attacks on verdicts. These concerns are not the same before the jury is sworn in. First, asking a juror a few more questions when he or she is already at the courthouse is much less harassing than bringing him or her back to the courthouse after completion of his or her jury service. Second, without a verdict, there would be nothing to collaterally attack and little reason for harassment. Because the reasons supporting *Lopez*'s "specific, substantial evidence" requirement do not apply with the same force before a jury is sworn, that requirement does not control when a trial court should hold a hearing on possible bias requested before swearing in the jury.

Instead, when a party requests a hearing on possible juror bias or misconduct after the jury has been selected but before it is sworn in, a trial court should hold such a hearing if the party provides some relevant basis, arising outside the normal course of voir dire, that indicates a juror is possibly biased or possibly committed misconduct. Such a hearing should comply with the requirements laid out in *Barnes* and *Stevens I & II*. This standard still requires some amount of specificity regarding a prospective juror's possible bias rather than a general hunch or feeling. However, the evidence of possible bias or misconduct need not be substantial. Instead, the new information need only be relevant to the juror's potential bias or misconduct. This standard—set lower than that in *Lopez*—recognizes the paramount importance of impartial juries and the relative ease with which trial courts can correct potential improprieties before the jury is sworn in. Further, by encouraging hearings in close cases, this standard helps prevent mistrials or retrials, which would result if a person's bias or misconduct were discovered after being sworn in as a

member of the jury. Finally, the requirement that the new information arise outside the normal course of voir dire—such as from a juror interrupting the proceedings to alert the court and parties to possible issues or from a juror's note—prevents this standard from being used by parties to bypass a court's limitations and get a second bite at the voir dire apple. Thus, to repeat the rule applicable here, if a party requests a hearing on juror bias or misconduct after the jury is selected but before it is sworn in and the party provides some relevant basis, arising outside the normal course of voir dire, that indicates a juror is possibly biased or possibly committed misconduct, a trial court should hold a hearing to determine if the juror is biased or committed misconduct.

## II. The trial court should have held a hearing when Easler requested one in response to Juror 4's note.

### A. The trial court abused its discretion when it failed to conduct a hearing prior to swearing in the jury.

Turning to the facts of this case, we find that the trial court abused its discretion when it failed to conduct a hearing regarding Juror 4's possible bias after Juror 4 had been selected to serve on the jury but before the jurors had been sworn in. After the trial court announced that Juror 4 had been selected to be on the jury, she asked if counsel were going to ask any more questions, and the trial court said no. While the court and parties were in the process of selecting an alternate juror and before anyone had been sworn in as a juror, Juror 4 wrote a note to the court explaining her prior experience with the impact of drunk driving. Easler asked to question Juror 4 to see if she could be fair and impartial, but the trial court did not hold a hearing. Juror 4's note shows a relevant basis indicating

possible bias. Thus, the trial court should have held a hearing to determine whether Juror 4 was biased before she was sworn in as a juror.[1]

Juror 4's note to the trial court provided a relevant basis indicating that she might be biased. In her note, Juror 4 said that "a family member was killed by a drunk driver. It was before I was born, but altered my family dynamic irreparably. I can be a jury member, but thought it is relevant to disclose." Appellant's App. Vol. II, p. 127. This information on Juror 4's family history constitutes a relevant basis showing that she might be biased in cases involving alleged drunk driving—like Easler's. The State argues that Juror 4's statement that she could still be a member of the jury obviated the need for a hearing, essentially equating this statement with a promise to be fair and impartial. *See* Oral Argument at 15:31–15:50. Although the trial court had previously informed all the prospective jurors that the goal of voir dire was to obtain a fair and impartial jury, saying "I can be a jury member" falls short of saying "I will be fair and impartial." And, considering the strong language Juror 4 used in her note, her statement that she could still be a juror does not wipe away the possibility that she was biased. Thus, Juror 4's note provided a relevant basis indicating her possible bias, and the trial court abused its discretion in not holding a hearing on the matter after Easler requested one.

## B. Under these circumstances, the only adequate remedy is a new trial.

Having found that the trial court abused its discretion when it did not hold the requested hearing into Juror 4's possible bias, we now consider the remedy. Easler contends that she is entitled to a new trial. The State disagrees, arguing that we should remand for an evidentiary hearing to fully investigate Juror 4's possible bias. We agree with Easler and

---

[1] We do not find misconduct by Juror 4 in this record. To the contrary, Juror 4 was a conscientious prospective juror, alerting the court and parties to relevant information as soon as she could. Therefore, we focus solely on her possible bias.

conclude that a new trial is the only adequate remedy in this case for three reasons.

First, examining Juror 4's possible bias would require a subjective assessment of how her family history might have impacted her thoughts and feelings in a case she knew little about during voir dire. This would be difficult to explore outside the context and timing of the voir dire setting. In *Thompson v. Gerowitz*, our Court of Appeals recognized the difficulty of making this type of subjective assessment in an after-the-fact hearing, and it remanded for a new trial. 944 N.E.2d 1, 9–10 (Ind. Ct. App. 2011). Cases involving subjective assessments can be contrasted with those involving objective assessments of a juror's bias, where remand for an evidentiary hearing is more feasible. *See Barnes*, 330 N.E.2d at 747 (remanding for an evidentiary hearing when the juror's bias turned on an objective assessment of the juror's knowledge of a relationship); *Diehl v. Clemons*, 12 N.E.3d 285, 297–98 (Ind. Ct. App. 2014) (remanding for an evidentiary hearing when the juror's bias turned, in part, on an objective assessment of the juror's memory of a lawsuit). Here, Juror 4's note showed that she knew her family history. The only question was what kind of impact that knowledge might have had on her ability to be fair and impartial. Since this involves a subjective assessment that would be difficult to make outside its normal context, a new trial is appropriate.

Second, the passage of time between when Juror 4 should have been examined about her possible bias and when she might be asked now supports remanding for a new trial. If we were to remand for an evidentiary hearing, Juror 4 would be forced to try to remember her subjective thoughts and feelings as of the date voir dire took place—almost a year and a half ago—and speculate as to how, at that time, she might have been impacted going forward. She would have to do this while avoiding any impermissible testimony about the jury's deliberations and verdict. *See* Ind. Evidence Rule 606(b); *Ward v. St. Mary Medic. Ctr. of Gary*, 658 N.E.2d 893, 894 (Ind. 1995). This would be an impractical, if not impossible, task.

Third, holding a new trial avoids potential juror harassment. As noted above, a concern about potential harassment of jurors after trial provides

the rationale for the requirement in *Lopez* that a party present "specific, substantial evidence" of possible bias to receive a hearing. Those same concerns are not present when a court holds a hearing before swearing in the jury. Following the State's suggestion of remanding for an evidentiary hearing now would introduce the potential for post-trial juror harassment where it did not exist before. A new trial avoids this result.

Whether Juror 4 was biased during Easler's trial involves a subjective assessment that would be difficult to make outside the context and timing of the voir dire setting. This difficulty is compounded by the passage of time since Juror 4's potential bias should have been examined. And allowing such an examination to take place now would open the door to potential post-trial juror harassment. Based on these reasons, a new trial is the proper remedy in this case.[2]

## Conclusion

When a party requests a hearing on possible juror bias or misconduct after the jury is selected but before it is sworn, a trial court should hold such a hearing if the party demonstrates some relevant basis, arising outside the normal course of voir dire, that indicates a juror is possibly biased or possibly committed misconduct. Here, Juror 4 submitted a note to the court that provided such a relevant basis indicating that she was possibly biased, and Easler requested a hearing. However, the trial court did not hold a hearing. That failure to hold a hearing constitutes an abuse of discretion. Accordingly, we reverse and remand for a new trial.

Rush, C.J., and David, Massa, and Slaughter, JJ., concur.

---

[2] Given our remand for a new trial, we need not address the issues Easler raised surrounding the trial court's denial of her for-cause challenge to Juror 4.

ATTORNEYS FOR APPELLANT
Talisha Griffin
Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Caryn N. Szyper
Deputy Attorneys General
Indianapolis, Indiana