

**FILED**

Oct 14 2016, 10:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kent R. Blair, Sr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 14, 2016

Court of Appeals Case No.
02A05-1604-CR-832

Appeal from the Allen Superior
Court

The Honorable Wendy W. Davis,
Judge

Trial Court Cause No.
02D04-1511-F6-1094

**Robb, Judge.**

# Case Summary and Issues

[1] Following a bench trial, Kent Blair was convicted of invasion of privacy, a Level 6 felony, and criminal trespass, a Class A misdemeanor. The trial court sentenced Blair to one and one-half years executed in the Indiana Department of Correction. Blair appeals his convictions and sentence, raising three issues for our review: (1) whether the evidence is sufficient to sustain his convictions, (2) whether the trial court abused its discretion in sentencing him, and (3) whether his sentence is inappropriate in light of the nature of the offenses and his character. Concluding the evidence is sufficient, the trial court did not abuse its discretion in sentencing Blair, and his sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] Blair and his wife, R.B., lived together in a home in Fort Wayne, Indiana. The home had been deeded to each of them by Blair's father. In July 2014, an incident of domestic violence occurred between the couple. Thereafter, R.B. sought a protective order against Blair and also initiated divorce proceedings. On November 26, 2014, the trial court issued an ex parte order of protection against Blair, which prohibited Blair for the next two years from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with

R.B., and further ordered him to stay away from R.B.'s residence, school, and place of employment. Blair received notice of the order.

[3] In July 2015, the dissolution court held a final hearing and later dissolved the couple's marriage; Blair did not appear at the hearing despite receiving notice. The dissolution decree awarded R.B. the home. On September 16, 2015, a court-appointed commissioner executed a quit claim deed thereby deeding the real estate to R.B.

[4] At some point, R.B. moved out of her home, claiming, "I left for the safety of my life." Transcript at 12. R.B. left certain pieces of personal property in the home, including furniture, a wine collection, and jewelry. R.B. often returned to the property to check on the home and to collect her mail. In so doing, she observed several of her personal items, including those noted above, were missing.

[5] On October 31, 2015, R.B. went to the home to retrieve some clothes and could not gain entry because the locks had been changed. Her son, A.B., and Blair were both inside the home, and when R.B. knocked on the door, they told her to leave and slammed the door in her face. R.B. demanded they leave her home, telling them it was her property and they were not allowed to be there; neither A.B. nor Blair obliged. R.B. then called law enforcement, and before law enforcement could arrive, Blair "took off running." *Id.* at 32.

[6] A week later, R.B. returned to the property to collect her mail. Again, R.B. was unable to enter her home. In fact, some of the doors had been padlocked. R.B.

called law enforcement. Upon arrival, law enforcement determined R.B. owned the home, and with R.B.'s permission, kicked in the front door to the home. Law enforcement discovered multiple sets of locks inside the home. Blair, who was inside the home, was arrested. In an interview following his arrest, Blair told law enforcement "the house was his, *it was given back to him in his divorce papers*, [and] that it had been in his family for generations . . . ." *Id.* at 47 (emphasis added). When asked to produce the divorce papers, Blair claimed R.B. had stolen them.

[7] On November 13, 2015, the State charged Blair with two counts of invasion of privacy as Level 6 felonies ("Counts I and II"), and one count of criminal trespass as a Class A misdemeanor ("Count III"). At trial, R.B., three members of law enforcement, and Blair all testified. Specifically, Blair testified he believed the home was his and he had a right to be there. He further testified he never received any divorce papers. The trial court found Blair guilty as charged, merged Counts I and II, and entered judgment of conviction on Counts I and III. The trial court sentenced Blair to one and one-half years on Count I and one year on Count III, to be served concurrently. Blair now appeals his convictions and sentence.

# Discussion and Decision

# I. Sufficiency of the Evidence

## A. Standard of Review

[8] In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the judgment and any reasonable inferences drawn therefrom. *Id.* We will affirm the conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (citation omitted).

## B. Invasion of Privacy

[9] "A person who knowingly or intentionally violates . . . an ex parte protective order . . . commits invasion of privacy, a Class A misdemeanor. However, the offense is a Level 6 felony if the person has a prior unrelated conviction for an offense under this section." Ind. Code § 35-46-1-15.1(2). The State alleged Blair knowingly or intentionally violated the ex parte protective order.[1] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Blair argues the evidence is insufficient to establish he knowingly violated the

---

[1] The State further alleged Blair had a prior conviction for invasion of privacy, for which he was serving probation at the time he committed the present offenses. The parties stipulated to the admission of his prior conviction at trial and Blair does not challenge this fact on appeal.

protective order because he believed he owned the home and had a right to be there. In support, Blair cites to portions of the record where he claimed he never received notice of the dissolution decree or the quit-claim deed.

[10] The evidence most favorable to the judgment and the reasonable inferences arising therefrom establish R.B. and Blair were both named on the deed to the home prior to the couple's divorce in 2015. Nonetheless, Blair received notice of the 2014 order of protection, which prohibited him from harassing, annoying, telephoning, or directly or indirectly communicating with R.B., and further ordered him to stay away from R.B.'s residence for a period of two years. Blair also received notice of the dissolution decree, which gave R.B. the home. R.B. feared for her safety and opted to move out, but left some of her belongings in the home and periodically returned to exchange clothes, collect her mail, and check on her personal belongings. She later discovered some of her belongings were missing and the locks had been changed. Blair had been staying at the home and knew R.B. periodically visited.

[11] On October 31, 2015, R.B. went to the home and could not gain entry because the locks had been changed. When R.B. knocked on the door, Blair answered and told her to leave. R.B. told Blair he was not allowed to be there. When Blair did not leave, R.B. called law enforcement and Blair immediately left the home. Despite this, Blair returned and continued to stay in the home, again changed the locks, and padlocked some of the doors. When R.B. arrived at the home on November 7, 2015, she could not gain entry and called law enforcement, who were forced to break down a door to the home.

Given the above evidence, a reasonable fact-finder could conclude Blair knowingly violated the protective order by harassing, annoying, and/or communicating with R.B., and by failing to stay away from R.B.'s residence. When Blair argues he did not receive the divorce decree and he therefore believed he was the sole owner of the home, he invites us to reassess witness credibility, which we will not do. Although we acknowledge Blair testified he never received the divorce decree and that he said he believed he owned the home, the fact-finder was not required to believe this testimony, especially in light of the fact the State presented evidence that Blair did receive the divorce decree. We conclude the evidence is sufficient to sustain Blair's conviction for invasion of privacy.

## C. Criminal Trespass

"A person who . . . not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person . . . commits criminal trespass, a Class A misdemeanor." Ind. Code § 35-43-2-2(b)(2). If a person has a fair and reasonable foundation for believing he has a right to be present on the property, there is no criminal trespass. *See Olsen v. State*, 663 N.E.2d 1194, 1196 (Ind. Ct. App. 1996). The State alleged Blair, not having a contractual interest in the property, knowingly entered R.B.'s property after being previously denied entry. On appeal, Blair argues the evidence is insufficient to sustain his conviction, contending he had a good faith claim of right to enter the property because he said he believed he owned the property.

[14] As noted above, Blair testified he never received the divorce decree and he believed he owned the property, but the trial court did not find his testimony to be credible in light of the contradictory statements he made following his arrest, namely that he had received the divorce decree. The record establishes Blair did not have a contractual interest in the home. On October 31, 2015, R.B. arrived at the home, discovered Blair was in the house, and told him to leave because it was her home and he was not allowed to be there. A week later, Blair was still in the home when R.B. arrived. We conclude the evidence is sufficient to sustain his conviction for criminal trespass.

## II. Sentencing Discretion

[15] We review a sentencing decision for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs when the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (citation omitted). A trial court may abuse its discretion by failing to enter a sentencing statement, finding aggravating or mitigating circumstances unsupported by the record, omitting aggravating or mitigating circumstances clearly supported by the record, or noting reasons for imposing a given sentence that are improper considerations as a matter of law. *Id*. at 490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would

have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id*. at 491.

[16] Blair contends the trial court abused its discretion in finding an aggravating circumstance unsupported by the record. Specifically, he contends "the vast majority of the trial court's sentencing statement was devoted to its mistaken belief that [Blair] had perjured himself during the trial by denying knowledge of the protective order." Appellant's Brief at 19. In sentencing Blair to one and one-half years in prison, the trial court stated,

> [C]andidly I find it aggravating that he would testify in a courtroom, basically I judged the credibility of the witnesses in this case and it shows complete disdain to the Court when he says I didn't know there was a no contact order in place, I didn't know there was a divorce, I didn't know who's [sic] house it was and I just feel like that was very disingenuous and candidly just dishonest.

Sentencing Transcript at 13. However, Blair did testify he had knowledge of the protective order, and prior to the conclusion of the sentencing hearing, Blair's counsel notified the trial court of this fact. In response, the trial court acknowledged it misspoke and clarified its point was that Blair's testimony, when taken together, was not credible. In light of this, the trial court did not alter Blair's sentence.

[17] Even assuming this misstatement amounted to error, we can say with confidence the trial court would have imposed the same sentence. As to the aggravating circumstances, the trial court identified Blair's criminal history,

which includes convictions for battery, domestic battery, possession of marijuana, and invasion of privacy. Further, at the time Blair committed these offenses, he was on probation. The trial court did not find any mitigating circumstances. Blair does not challenge whether the record supports the remaining aggravating circumstances nor does he challenge the trial court's decision not to identify any mitigating circumstances. The remaining aggravating circumstances identified by the trial court are supported by the record. We therefore conclude the trial court did not abuse its discretion in sentencing Blair.

## III. Inappropriate Sentence

[18]   Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading this court his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to "leaven the outliers," not achieve the perceived "correct" result in each case. *Id*. at 1225.

[19] The advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. *Anglemyer*, 868 N.E.2d at 494. Blair was convicted of invasion of privacy as a Level 6 felony. A person convicted of a Level 6 felony shall be imprisoned for a fixed term of between six months and two and one-half years, with the advisory sentence being one year. Ind. Code § 35-50-2-7(b). The trial court sentenced Blair to one and one-half years in the Department of Correction. As to the nature of the offenses, we note nothing exceptional about the facts or circumstances apart from the fact the trial court did not believe Blair was truly ignorant of the fact R.B. owned the home. In light of this, Blair's violation of the protective order by continuing to stay in R.B.'s home and repeatedly changing the locks to deny R.B. access to her home was more serious than simply contacting or communicating with her.

[20] Blair's criminal history is noted above. *See supra* Part II. We find it particularly telling that Blair was serving probation following a conviction for invasion of privacy against R.B. when he committed the present crimes. This we cannot ignore. We conclude Blair's sentence of one and one-half years in the Department of Correction is not inappropriate.

# Conclusion

[21] We conclude the evidence is sufficient to sustain Blair's convictions for invasion of privacy and criminal trespass. We further conclude the trial court did not abuse its discretion in sentencing Blair and his sentence is not inappropriate in

light of the nature of the offenses and his character. Accordingly, we affirm his convictions and sentence.

[22] Affirmed.

Mathias, J., and Brown, J., concur.