


FILED

May 15 2025, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Patrick Norton,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

May 15, 2025

Court of Appeals Case No.
24A-CR-2330

Appeal from the Hamilton Superior Court

The Honorable William J. Hughes, Judge

Trial Court Cause No.
29D03-2309-F6-7145

---

**Opinion by Judge Scheele**
Judges May and Weissmann concur.

**Scheele, Judge**

## Case Summary

[1] A jury found Patrick Norton guilty of Class B misdemeanor disorderly conduct. On appeal, Norton raises two issues for our review which we restate as: (1) whether the trial committed fundamental error when it allowed a potentially unqualified juror to serve after Norton made no challenge to the juror's service; and (2) whether the State presented sufficient evidence to rebut Norton's claims of defense of property and self-defense. Because Norton waived review of the juror's service after he failed to make any challenge and sufficient evidence exists to sustain Norton's disorderly conduct conviction, we affirm.

## Facts and Procedural History

[2] In September 2023, Norton co-owned a home in Westfield, Indiana, with his former fiancé, Janice Armstrong. Armstrong's daughter, Gianna Roman, and Armstrong's son also resided in the home. Roman was attending college but occasionally returned home. In the early morning of September 24, Norton came home and discovered that Roman was in her bedroom with her boyfriend, Jayden Lopez. Although Armstrong had allowed Lopez to stay at the home previously, Norton told Armstrong and Roman he no longer wanted Lopez in the home.

[3] Around 1:51 a.m., Norton texted Roman, "[Lopez] needs to leave. If I'm not getting laid in this house then NOBODY is. I'll make a scene if I have to" and "Go back to school if you want to b[****.]" Ex. Vol. IV p. 8. Roman forwarded

Norton's texts to a sleeping Armstrong. Armstong awoke and went downstairs, where she found Norton, who had been drinking. They argued at length. Norton repeatedly exclaimed he was going to physically remove Lopez from the house and would "kick his a[**]." Ex. Vol. V p. 19, Def.'s Ex. H, 00:16-00:19. At some point during their argument, Armstrong began recording Norton with her cell phone.

[4] As Norton and Armstrong walked up the stairs, Norton remarked: "[I]t's been a minute since I've been on a roll. But let's roll." Tr. Vol. II p. 173. At the top of the stairs, Norton encountered Roman and Lopez. Norton told Lopez he needed to leave; Armstrong retorted Lopez did not have to leave. Norton grabbed Lopez's arm, and a fight ensued. Norton attempted to push Lopez down the stairs, then pushed Lopez against the staircase banister, breaking multiple spindles. Lopez tried to balance himself by grabbing Armstrong, who was standing nearby, causing Armstrong to lose her balance and fall. Lopez then repeatedly punched Norton in the face and put Norton in a headlock. Around this time, Armstrong stopped recording and she and Roman both called 9-1-1. Lopez tried to talk down Norton, releasing and re-restraining Norton multiple times. Each time, Norton attempted to resume fighting and asserted he would "kill [Lopez]." Tr. Vol. III p. 6.

[5] The fighting stopped when officers arrived and separated Norton and Lopez. Westfield Patrol Officer Jonathan Mathioudakis observed injuries on Norton and Lopez: Norton was bleeding from lacerations and had swelling on his head;

Lopez had a broken knuckle, cuts on his face and arms, and bruising on his arms and back.

[6]     The State charged Norton with Level 6 felony intimidation, Class A misdemeanor domestic battery, Class A misdemeanor battery resulting in bodily injury, and Class B misdemeanor disorderly conduct. A jury trial commenced on August 20, 2024. During jury selection, the State informed the trial court that Juror number eighteen (Juror 18) "checked on her jury [questionnaire] that her rights had been revoked." Tr. Vol. II p. 120. Neither the State nor defense counsel asked Juror 18 about her questionnaire response or if her rights were still revoked; they did not determine, therefore, whether she was unqualified to serve as a juror.[1] Indeed, Norton did not question Juror 18 at all. The trial court informed defense counsel he had one peremptory strike remaining, but defense counsel declined to strike Juror 18. The jury found Norton guilty of disorderly conduct and not guilty on all other charges. Norton was sentenced to time served. Norton now appeals.

---

[1] Juror 18's questionnaire is not included in the record. The State correctly notes it is the appellant's duty to provide the reviewing court with an adequate record for review. *See Johnson v. State*, 747 N.E.2d 623, 627 (Ind. Ct. App. 2001).

## Discussion and Decision

### I. Norton waived appellate review of Juror 18's service when he failed to comply with the exhaustion rule.

Norton claims the trial court erred when it did not remove Juror 18 from service after she indicated on her questionnaire form that her "rights had been revoked." Tr. Vol. II p. 120. However, his failure to comply with the exhaustion rule—requiring parties to use available peremptory challenges to correct an erroneous denial of a for-cause challenge against the same prospective juror—results in the waiver of this issue. To avoid waiver, Norton contends the trial court committed fundamental error.

"The Federal and Indiana Constitutions guarantee the right to an impartial jury." *Oswalt v. State*, 19 N.E.3d 241, 245 (Ind. 2014) (citing *Ramirez v. State*, 7 N.E.3d 933, 936 (Ind. 2014)). Selecting an impartial jury depends on the parties' discernment and the trial court's discretion. *Oswalt v. State*, 19 N.E.3d at 245. "Removing prospective jurors—whether peremptorily or for cause—who cannot perform these tasks is the mechanism parties and trial courts use to achieve an impartial jury." *Id.* at 245-46 (citing *Emmons v. State*, 492 N.E.2d 303, 305 (Ind. 1986)).

"Peremptory challenges . . . give parties the nearly unqualified right to remove any prospective juror they wish—restricted only by the parties' finite allotment of challenges and the constitutional ban on racial, gender, and religious discrimination." *Oswalt*, 19 N.E.3d at 246 (Ind. 2014) (quotations and citations omitted). "For-cause motions, by contrast, are available to exclude any

prospective juror whose views would prevent or substantially impair the performance of h[er] duties as a juror in accordance with h[er] instructions and h[er] oath and thus violate the defendant's Sixth Amendment rights" to an impartial jury. *Id.* (quotations and citations omitted).

[10] The exhaustion rule requires parties to use any available peremptory challenges to correct an erroneous denial of a for-cause challenge against the same prospective juror. *Oswalt*, 19 N.E.3d at 246. The exhaustion rule promotes judicial economy by requiring parties to "use the tools at their disposal to cure error and avoid significant costs that will accrue to the judiciary, the parties, and the citizen jurors." *Id.* Failure to comply with the exhaustion rule results in waiver of the issue on appeal. *Miller v. State*, 188 N.E.3d 871, 876 (Ind. 2022) (citing *Whiting v. State*, 969 N.E.2d 24, 29-30 (Ind. 2012)).

[11] Regarding a prospective juror's qualifications to serve, Indiana Code Section 33-28-5-18(a) (2010) and Indiana Jury Rule 5 both provide that a judge "shall determine" whether a prospective juror is qualified to serve, and each lists several conditions that disqualify a potential juror from service. Relevant to this appeal, a prospective juror is disqualified to serve on a jury if her "right to vote [was] revoked by reason of a felony conviction and the right has not been restored." Ind. Code. § 33-28-5-18(b)(5) (2010); Ind. Jury. Rule. 5(g).

[12] Regarding challenges to a juror's service, Indiana Code Section 35-37-1-5 (1989) provides a list of "good causes for challenge to any person called as a juror in any criminal trial[,]" including "[t]hat the person does not have the

qualifications for a juror prescribed by law." Ind. Code § 35-37-1-5(a)(12). Indiana Jury Rule 17(a)(1) provides a court will sustain a for-cause challenge when a prospective juror is disqualified under Indiana Jury Rule 5. Taken together, these tools adequately allow parties "to cure error and avoid significant costs[,]" promoting judicial economy. *Oswalt*, 19 N.E.3d at 246.

[13] Here, under Jury Rule 17 and Indiana Code Section 35-37-1-5(a)(12), Norton had grounds to make a for-cause challenge against Juror 18 based on her questionnaire response. Yet, Norton used neither a for-cause challenge nor a peremptory strike to challenge Juror 18's service. Thus, Norton failed to comply with the exhaustion rule, and he has waived his claim for review.

[14] Norton attempts to avoid the effect of his waiver by arguing the trial court committed fundamental error by not sua sponte removing Juror 18. "A party's failure to [raise] an alleged error at trial results in waiver, also known as 'procedural default' or 'forfeiture.'" *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018 (quoting *Bunch v. State*, 778 N.E.2d 1285, 128 (Ind. 2002)). "An error is fundamental, and thus reviewable on appeal, if it 'made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm.'" *Durden*, 99 N.E.3d at 652 (quoting *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014) (internal quotation marks omitted in original). However, our Supreme Court declined to extend the fundamental-error exception to procedural defaults under the exhaustion rule, as doing so would "both weaken the exhaustion rule and utilize fundamental error not as a 'narrow exception' but as

the general rule." *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012). The *Whiting* Court also declined to extend the fundamental-error exception to preserve incentives for counsel "to exercise peremptory challenges curatively[.]" *Id.* We also decline to extend the exception here.

## II. Sufficient evidence supports Norton's disorderly conduct conviction.

[15] Norton argues the State presented insufficient evidence to rebut his claims of defense of property and self-defense. A claim of defense of property is analogous to a claim of self-defense. *Gomez v. State*, 56 N.E.3d 697, 702 (Ind. Ct. App. 2016). "The standard of review for a challenge to the sufficiency of evidence to rebut a claim of [defense of property or] self-defense is the same standard for any sufficiency of the evidence claim." *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). Under this "deferential standard of review . . . we 'neither reweigh the evidence nor judge witness credibility[.]'" *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024) (quoting *Brantley v. State*, 91 N.E.3d 566, 570 (Ind. 2018), *cert. denied*). Instead, "we respect a fact-finder's exclusive province to weigh conflicting evidence [. . . and] consider only the probative evidence and reasonable inferences that support the verdict." *Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018) (internal quotations omitted). "We will reverse only if no reasonable person could say the State overcame the [defense of property or] self-defense claim[s] beyond a reasonable doubt." *Larkin v. State*, 173 N.E.3d 662, 670 (Ind. 2021).

A person who recklessly, knowingly, or intentionally engages in fighting or tumultuous conduct commits disorderly conduct, a Class B misdemeanor. Ind. Code § 35-45-1-3 (2014). A defendant may commit disorderly conduct even when the fighting is within his home. *Mi.D. v. State*, 57 N.E.3d 809, 813 (Ind. 2016). Norton does not dispute he fought Lopez on the stairs; instead, he argues there was insufficient evidence to rebut his claims of defense of property and self-defense.

## A. Defense of property

Indiana Code Section 35-41-3-2(d) (2019) (defense of property) provides, in relevant part:

> (d) A person:
>
>> (1) is justified in using reasonable force, including deadly force, against any other person; and
>>
>> (2) does not have a duty to retreat;
>
> if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle.

Relevant here, a person is not justified in using force if "the person provokes unlawful action by another person with intent to cause bodily injury to the other person; or [] the person has entered into combat with another person or is the initial aggressor[.]" I.C. § 35-41-3-2(d)(2)-(3) (2019). "Any force employed

must be reasonable in light of the urgency of the situation." *Gomez*, 56 N.E.3d at 702 (internal quotation omitted).

[18] Here, the State presented sufficient evidence to rebut Norton's defense of property claim. Norton argues Lopez was a trespasser who was not authorized to be in the home. But Armstrong, a co-owner of the home, previously gave Lopez permission to be on the property and, during the argument, re-affirmed that Lopez could stay. Relying on Armstrong's statements, Lopez had a "fair and reasonable foundation for believing he ha[d] a right to be present" and was not trespassing. *See Blair v. State*, 62 N.E.3d 424, 428 (Ind. Ct. App. 2016) ("If a person has a fair and reasonable foundation for believing he has a right to be present on the property, there is no criminal trespass."). Also, Lopez was not given a reasonable amount of time to leave the home after Norton reached the top of the stairs and told Lopez to leave. *See Lemon v. State*, 868 N.E.2d 1190, 1196-97 (Ind. Ct. App. 2007) (holding no trespass occurred when landowner's agent did not give defendant reasonable period of time to comply with communication to leave). Finally, Norton's use of force—grabbing Lopez by his arm, pushing Lopez into the staircase banister, and attempting to push Lopez down the stairs—was not reasonable in light of the urgency of the situation, as Lopez was peacefully standing at the top of the stairs. *See Gomez*, 56 N.E.3d at 702 (holding defendant grabbing trespasser by the hair and pushing her into wall causing scratches and cuts after she walked into premises was unreasonable in light of urgency of the situation). The State presented sufficient evidence.

## B. Self-defense

[19] Similarly, the State presented sufficient evidence to rebut Norton's self-defense argument. To prevail on a claim of self-defense, a defendant must prove "he was in a place where he had a right to be, 'acted without fault,' and reasonably feared or apprehended death or great bodily harm." *Larkin*, 173 N.E.3d at 670. The State must then disprove one of the necessary elements by "rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.* (internal quotation omitted).

[20] Norton both instigated a fight and provoked Lopez when he grabbed Lopez's arm and pushed him. Thereafter, Norton willingly participated in a brutal brawl against Lopez. This evidence alone supports a finding that Norton was not without fault as to the violence that subsequently ensued. *See Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017) ("A person who provokes, instigates, or participates willingly in the violence does not act without fault for the purposes of self-defense."). The State's evidence is sufficient to negate an element of Norton's self-defense claim. *See Kimbrough v. State*, 911 N.E.2d 621, 635 (Ind. Ct. App. 2009) (explaining State's burden to negate at least one element of self-defense). Norton's argument fails.

## Conclusion

Norton waived any alleged error by the trial court when he failed to challenge Juror 18's service and the State presented sufficient evidence to rebut Norton's defense of property and self-defense claims. We affirm.

Affirmed.

May, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Bryan L. Cook
Bryan L. Cook Law Office
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Supervising Deputy Attorney General
Indianapolis, Indiana